MITCHELL et al. v. INMAN.

(Court of Civil Appeals of Texas. Ft. Worth. March 8, 1913.)

1. INSANE PERSONS (§ 61*) — VENDOR AND PURCHASER (§ 239*)—VALIDITY OF CONVEYANCES—BONA FIDE PURCHASERS.

A conveyance by an insane person is not void, but merely voidable, and the fact that the grantee did not know of the insanity of his grantor does not validate the deed, nor does the fact that the conveyance was obtained without fraud and for an adequate consideration prevent an avoidance thereof, nor the fact that the property has passed into the hands of an innocent purchaser.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 93–99; Dec. Dig. § 61;* Vendor and Purchaser, Cent. Dig. §§ 583–600; Dec. Dig. § 239.*]

2. INSANE PERSONS (§ 29*)—INQUISITION—RESTORATION TO SANITY — CONCLUSIVENESS.

A judgment reciting a person's restoration to sanity is conclusive only of his status at the time the judgment was rendered.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 42, 140, 150; Dec. Dig. § 29.*]

3. EVIDENCE (§ 67*) — PRESUMPTIONS — CONTINUANCE OF SANITY.

Sanity once shown to exist will be presumed to continue, unless the contrary is established.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 87, 88, 103; Dec. Dig. § 67.*]

4. DEEDS (§ 196*)—ACTION TO CANCEL CONVEYANCE—BURDEN OF PROOF.

In an action to cancel a conveyance made by a power of attorney on the ground that the grantor was not of sound mind, where the defendants introduce a judgment restoring plaintiff to sanity previous to a certain conveyance, the burden is upon the plaintiff to show that he thereafter became insane, and was insane at the time he executed the power of attorney.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 587–593, 649; Dec. Dig. § 196.*]

5. EVIDENCE (§ 332*) — DOCUMENTARY EVIDENCE—JUDICIAL RECORDS.

A document purporting to be a judgment of the county court certified by the clerk there-

of as a true and correct copy of the order entered on the lunacy docket in a certain cause styled state of Texas against plaintiff, whereby he was adjudged insane and ordered to be conveyed to an asylum, was admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1237–1246; Dec. Dig. § 332.*]

**6. INSANE PERSONS (§ 26*)—INQUISITION—ORDER—PRESUMPTIONS.**

Where the county court has general jurisdiction in insanity inquisitions, it will be presumed upon introduction of an order adjudging plaintiff insane that facts existed which authorized its rendition and entry, so that it was not necessary that it recite the facts conferring jurisdiction on the court.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 35, 36; Dec. Dig. § 26.*]

**7. EVIDENCE (§ 116*)—SHOWING ENTIRE CONVERSATION OR TRANSACTION.**

Where defendants in an action to cancel a conveyance on the ground of plaintiff's insanity at the time of its execution attacked the credibility of witnesses, a husband and wife who had both signed the conveyance executed by plaintiff's attorney, and drew out the husband's statement that the attorney threatened to have the wife sign it or call plaintiff up and have him sent back to the asylum, the wife's statement that the grantee and the attorney both acknowledge that plaintiff was going crazy was substantially to the same effect as that of the husband, and was admissible as another part of what was done and said at the time.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 134, 135; Dec. Dig. § 116.*]

**8. TRIAL (§ 252*) — INSTRUCTIONS — CONFORMITY TO EVIDENCE.**

In an action to cancel a conveyance on the ground of the grantor's insanity at the time of its execution by his attorney, where the evidence failed to show that any part of the consideration received for the land ever went for necessaries for the lunatic, a requested instruction that if plaintiff had received any part of the consideration, and expended it for necessaries, he could not recover unless he tendered back such amount, was properly refused, as not being within the issues raised by the evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

**9. CANCELLATION OF INSTRUMENTS (§ 59*)—RELIEF—RESTORATION OF PROCEEDS.**

In an action to cancel a conveyance on the ground of the grantor's insanity at the time of its execution, the court may grant the relief sought by requiring the payment of such part of the consideration, if any, as was expended for necessaries for the grantor.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 119–125; Dec. Dig. § 59.*]

Error from District Court, Clay County; P. A. Martin, Judge.

Action by J. C. Inman, by guardian, against J. B. Mitchell and others. Judgment for plaintiff, and defendants bring error. Affirmed.

R. E. Taylor, of Henrietta, Sidney L. Samuels and Theo. Mack, both of Ft. Worth, for plaintiffs in error. Templeton & Agerton, of Ft. Worth, for defendant in error.

CONNER, C. J. Defendant in error, alleged to be non compos mentis, through his guardian, instituted this suit to recover two surveys of land in Clay county, each containing 320 acres, and to cancel a power of attorney made by J. C. Inman to W. J. Inman and a deed by virtue thereof to one J. H. Warren, and a later deed of confirmation made by J. C. Inman to Warren purporting to convey the lands. Plaintiff in error J. B. Mitchell answered, alleging that he was a purchaser of the land in controversy for value and without notice of the alleged incompetency of J. C. Inman. E. T. Ustick answered with a like plea, claiming to be the owner without notice of a certain mortgage upon the lands made by J. H. Warren, which had been given to secure a loan of $2,500. After giving a legal test of the mental capacity necessary to make a valid and binding deed or power of attorney relating to land, the court submitted the case upon a single issue, as will be evident by the second and third clauses of the court's charge, which read:

"(2) Therefore, if you believe from the evidence before you that at the time of the execution of the power of attorney given by J. C. Inman to W. J. Inman dated December 17, 1908, and at the time of the execution of the deed made by J. C. Inman to J. H. Warren, dated February 16, 1910, that the said J. C. Inman had not the mental capacity to make a valid and binding instrument, as such capacity is above explained, you will find a general verdict for the plaintiff.

"(3) If, on the other hand, you believe from the evidence that at the time of the execution of either of said instruments the said J. C. Inman had sufficient mental capacity to execute the same, as such capacity is explained in the first subdivision of this charge, then you will find a verdict for the defendants."

The verdict and judgment were in favor of the defendant in error, and plaintiffs in error present the case for revision.

Error is first assigned to the action of the court in sustaining exceptions presented to the pleas of innocent purchase set up by plaintiffs in error, the contention being that the deed of an insane person is voidable only, and that, therefore, one purchasing under such voidable title without notice and for value will take full title as against a remote insane vendor, as defendant in error was alleged to be. As alleged, and as indeed shown by the evidence, J. C. Inman executed to W. J. Inman, his brother, on December 17, 1908, a power of attorney sufficient in terms to authorize the conveyance of the lands in question; that by virtue of such power of attorney W. J. Inman on October 25, 1909, assuming to act under the power of attorney, conveyed the lands by general warranty deed to the defendant J. H. Warren, who thereafter on February 16, 1910, induced J. C. Inman to execute a quitclaim deed for a recited consideration of $10,000. It was further alleged in the pleas of innocent purchase that the land was later con-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

veyed by Warren to one Legan and by Legan to one Luallin, from the latter of whom plaintiff in error Mitchell purchased on August 13, 1910, paying an adequate consideration therefor without notice of the alleged fact of J. C. Inman's unsoundness of mind at the time of the execution of the power of attorney and deed made by him.

[1] Our Supreme Court upon certified question in the case of Williams v. Sapieha, 94 Tex. 430, 61 S. W. 115, expressly held that a power of attorney by one of unsound mind and a conveyance of land by virtue thereof was not void, but merely voidable. The further effect of the decision, however, is undoubtedly that in this state such conveyances may be avoided by a person of unsound mind, unless precluded by circumstances not shown in this case. It is said by the author of 22 Cyc. p. 1171, par. C, that: "A lunatic cannot bind himself absolutely by a conveyance of his property, and the fact that the grantee was not aware of the insanity of the grantor does not validate the deed." The same author on page 1174 of the same volume says: "The facts that a conveyance from an insane person was obtained without fraud, and was based on an adequate consideration, do not prevent an avoidance thereof; neither does the fact that the property conveyed by an insane person has passed into the hands of an innocent purchaser." Numerous authorities are cited in support of the text which we think announce the rule in effect affirmed by our Supreme Court in the case cited. It follows, we think, that no error was committed by the court in striking out plaintiffs in error's pleas of innocent purchase, as complained of in the first assignment, nor in giving the special charge objected to in the second assignment of error which was to the effect that J. B. Mitchell and E. T. Ustick could acquire from their grantors, respectively, no better title to the land in controversy than said grantors had acquired from J. C. Inman, and that, therefore, the defendants' pleas of innocent purchase should be disregarded. Such pleas could constitute no defense in event J. C. Inman was in fact insane at the time he made the instruments already mentioned.

[2-4] Plaintiffs in error's third assignment is as follows: "The court erred in refusing to give to the jury these defendants' special charge No. 2, which was as follows: 'Gentlemen of the jury, in this case the defendants, Mitchell and Ustick, have offered in evidence a judgment of the county court of Clay county, Tex., dated the 19th day of December, A. D. 1907, restoring J. C. Inman to his rights as a sane man, and you are instructed that after the rendition of such judgment the presumption is that J. C. Inman was a person of sound mind, and, before you can find for the plaintiff, you must find that the plaintiff has proven by a preponderance of evidence that the said J. C.

Inman thereafter became insane, and was insane at the time of the execution of the power of attorney in question, and unless you so find you will find for the defendants, Mitchell and Ustick.'" A judgment as recited in the special charge quoted was read in evidence, and plaintiffs in error insist that they had the right to rely implicitly upon such judgment as establishing J. C. Inman's sanity. We think it must be held, however, that the judgment was conclusive only of J. C. Inman's status at the time the judgment was rendered. True, the condition of mind thus fixed would be presumed to continue until the contrary be established, yet the presumption would have no greater force than the presumption of soundness of mind indulged in every case where the question is pertinent. The presumption is by no means conclusive. It may be rebutted by proof, the material question being, Was the person of sound mind at the very time of the transaction under consideration and the issue was thus expressly presented by the court? Indeed, a different interpretation of the law is not presented by the special charge. It was therein merely directed that after the rendition of the judgment the presumption was that J. C. Inman was of sound mind, and that the verdict should be for the defendants, unless the plaintiffs had proven by a preponderance of the evidence that J. C. Inman thereafter became insane, and was insane at the time of the execution of the power of attorney in question. The court's charge fully presented this view, the jury being instructed in addition to what has been before quoted that: "The burden of proof is upon the plaintiffs to show that J. C. Inman was insane at the time he executed the instrument involved in this suit by a preponderance of the evidence, and, unless he has done so, you will find for the defendant." Plaintiffs in error's third assignment is accordingly overruled.

[5] Upon the trial the plaintiff introduced a document duly certified to by the county clerk of Denton county, Tex., which reads as follows: "No. 50. Lunacy. The State of Texas v. J. C. Inman. In term time October 23rd, 1891, defendant adjudged insane and ordered to be conveyed to the asylum at Terrell, in Kaufman county, Texas, for restraint and treatment." Plaintiffs in error insist under the fourth assignment that this document is not a judgment of the court, but merely a conclusion of the clerk; that it does not state such facts as authorized its introduction in evidence, but is purely an ex parte or hearsay statement made by the clerk, and that it does not undertake to set forth the domicile of J. C. Inman. We think these objections, however, are untenable. The order purports to be a judgment of the court, the certificate of the clerk being in due form, and merely that the document "is a true and correct copy of the order

entered on the lunacy docket of the county court of Denton county in lunacy cause No. 50, styled State of Texas v. J. C. Inman, as appears, on page 194 of said docket."

[6] Nor is it necessary to the validity of the order that it should recite the fact conferring jurisdiction upon the court that entered it. The county court of said county had general jurisdiction over the subject-matter, and it must be presumed in this proceeding that the facts existed which authorized its rendition and entry. The fourth assignment is, accordingly, overruled.

[7] Plaintiffs in error in the fifth assignment object to the testimony of Mrs. F. G. Wade, who is the sister of J. C. Inman, and who together with her husband joined in the deed made by W. J. Inman to J. H. Warren on October 25, 1909, to the effect that, at the time that she so joined in the execution of the deed to Warren, Warren and W. J. Inman induced her to sign the same by stating that the instrument was a "deed of trust; that they acknowledged—both of them—that Jim (J. C. Inman) was going crazy." The testimony was objected to for the reason "that it was not in rebuttal of any question asked; that it was hearsay; and because it was a declaration of other parties made and done in the absence of plaintiffs in error Mitchell and Ustick, without their knowledge and consent, and without its having been shown that they were connected with the conversation or transaction, or had any notice, actual or implied." We are of opinion that no reversible error has been shown. It further appears that this witness and her husband had both been examined in chief by the defendants in error, Mrs. Wade testifying to circumstances and giving her opinion that J. C. Inman was of unsound mind at the times involved in the controversy. It further appears that upon the cross-examination of F. G. Wade, the husband, the deed was exhibited to him, and he was asked if he did not sign same, and if his wife had not signed the same, and had not duly acknowledged it as appeared in the certificate of the notary, and the witness answered that he had signed the deed, and that his wife had done so, but that it was represented to them as a deed of trust by Warren and W. J. Inman, and that "John (W. J. Inman) got her (Mrs. Wade) to believing that it was a deed of trust—she never read it. John threatened to have her sign it or throw Jim (J. C. Inman) up and have him sent back to the asylum." It seems evident that an attack upon the credibility of Mr. and Mrs. Wade was thus made by plaintiffs in error, and that, they having introduced a part of what was said and done at the time, all that was then said and done on the same subject was admissible. The bill of exception fails to show an objection to the specific statement made by Mrs. Wade that "they (Warren and W. J. Inman) acknowledged—both of them— that Jim (J. C. Inman) was going crazy." On the contrary, the objections in the bill relate to all that Mrs. Wade was permitted to testify, part of which was clearly admissible in view of the cross-examination on the part of plaintiffs in error of the husband, F. G. Wade. Moreover, the statement of F. G. Wade which was clearly drawn out by plaintiffs in error that "John threatened to have her sign it or throw Jim up and have him sent back to the asylum" was, we think, substantially of the same effect as the statement of Mrs. Wade which would, if standing alone, seem clearly objectionable. On the whole, under the circumstances stated, we think the assignment raising the question (the fifth) must be overruled.

[8, 9] The only remaining assignment questions the action of the court in refusing to give a special charge to the effect that if J. C. Inman received any part of the money received by W. J. Inman upon the execution of the conveyance to Warren, and that the same had been spent upon him for necessaries, the verdict should be for the defendants "unless he (J. C. Inman) has tendered back such amount, if any, as may have been expended on him for necessaries, if any." We do not think the evidence raised the issue so sought to be sustained. The only testimony on the subject was that of W. J. Inman. He testified, in substance, that he had received the $2,500 for which the land was conveyed to Warren; that of this amount "J. C. Inman got about $100 of it, and $110 was paid to cover a draft J. C. Inman signed as indorser." W. J. Inman further testified that he paid out of the $2,500 "about $700 on a judgment against his brother, J. C. Inman, and himself jointly." The evidence is otherwise undisputed to the effect that at the date of the trial J. C. Inman had nothing, and the evidence quoted clearly fails to show, as we think, that any part of the consideration received for the land ever went for necessaries to the lunatic. It is certain that he received nothing that ever proceeded from the plaintiffs in error, and the character of the judgment paid or of the note upon which J. C. Inman was indorser, if any, does not appear, nor does it appear by virtue thereof that any lien upon the land had ever been acquired by any person, or had been discharged by W. J. Inman's payments. Moreover, it would not be true as a legal proposition that the verdict should have been for the defendants "unless he (J. C. Inman) has tendered back such amount, if any, as may have been expended on him for necessaries, if any." It is undisputed that no such tender was made, and the court might nevertheless have granted the relief sought by requiring the payment of such small part of the consideration, if any, as was proven to have been expended for necessaries for J. C. Inman.

We conclude that all assignments of error must be overruled, and the judgment affirmed.