### BOLTON v. STEWART.

No. 14738.

Court of Civil Appeals of Texas. Fort Worth.

Dec. 14, 1945.

John Davenport, of Wichita Falls, for appellant.

Wayne Somerville and Ralph P. Mathis, both of Wichita Falls, for appellee.

SPEER, Justice.

Lillian Taylor, joined by her husband, H. A. Taylor, sued M. D. Bolton to recover the value of certain secondhand household goods, purchased by Bolton from Mrs. Maud Stewart, alleged to be a person of unsound mind, for whom Mrs. Taylor was the legally appointed and acting guardian.

Plaintiffs' action is based upon an alleged conversion by defendant Bolton of the furniture so purchased by him from Mrs. Stewart.

Plaintiffs made allegations of the mental incompetency of Mrs. Stewart, her trial and adjudication of insanity and commitment to a state institution; that Mrs. Taylor was the daughter of Mrs. Stewart and that she was the legally appointed and acting guardian of Mrs. Stewart. That defendant had, without the knowledge or consent of the guardian, purchased from Mrs. Stewart the household goods for $125, when as a matter of fact, they were of the reasonable cash market value of $1080 and were reasonably worth to Mrs. Stewart and to plaintiffs $1330. That all of said articles had been well cared for and Mrs. Stewart had become accustomed to their uses. That shortly after defendant had so purchased the goods from Mrs. Stewart he was advised that Mrs. Stewart was mentally incompetent to transact her business and that he should not dispose of the goods; that one of the plaintiffs and guardian aforesaid, called upon defendant for the return of the goods and tendered him the price he had paid, with $5 extra as interest, and defendant refused to accept the money and return the goods; that plaintiffs kept the tender good and would credit such judgment as they received with the purchase price of $125. Allegations were made upon which plaintiffs sought both compensatory and exemplary damages; prayer was for the value of the articles involved and for $1000 exemplary damages.

Defendant answered by exceptions and general denial. No complaint is made of

rulings on the special exceptions urged by defendant.

Trial was to a jury on special issues; verdict was favorable to plaintiffs; court allowed the credit of $125 on the item of compensatory damages and entered judgment for $750, of which amount $500.00 was for actual damages and $250 as exemplary damages. From this judgment defendant has appealed.

First point of error is substantially that error was committed in admitting evidence, over defendant's objection, as to the value of the household goods to plaintiff and to Mrs. Stewart as well also permitting Mrs. Taylor to testify as to the original cost of the articles.

■ Cross examination of Mrs. Taylor clearly indicates that her testimony as to original cost was hearsay and was not competent testimony. No motion was made to exclude it. As we view this record, the case should not be reversed on this account however, because the verdict and judgment do not depend upon the strength of that testimony. As we shall presently show, the case was not tried upon the theory of the reasonable market value of the goods, which in a way would involve the original cost, along with the length of time they had been used and their present condition. If there was competent testimony of the reasonable value to plaintiffs and Mrs. Stewart, the fact that incompetent testimony was admitted upon some other theory will not afford grounds for reversal. Rule 434, Texas Rules Civil Procedure; 17 Tex.Jur. 236, sect. 153; Moody v. Castleberry, Tex.Civ. App., 151 S.W.2d 960.

A very limited amount of defendant's brief is devoted to a discussion of the admission of testimony concerning the intrinsic value of the goods to plaintiffs and her mother.

As pointed out above, plaintiffs sought recovery of damages for the wrongful conversion by defendant of the enumerated items of secondhand household goods. They alleged both the reasonable market values and also the reasonable value to them and Mrs. Stewart for the purposes for which the articles had been used. They did not allege that there was no market value for such secondhand articles at that time and place. They made no effort to prove the reasonable market value, but relied upon the actual and intrinsic value. The special issue submitted as to values inquired what was the fair and reasonable value to

Mrs. Stewart at the time and place of the purchase by defendant. The answer was $625. Court gave credit on this amount for the $125 paid by defendant, and entered judgment on this issue for $500.

Mrs. Taylor testified concerning the values to her mother of the many enumerated items, but not all; those about which she did testify aggregate more than $700. No effort was made by defendant to disprove her estimate of values—it stands undisputed. The verdict has that uncontradicted testimony to support it.

■ In actions of this character the measure of damages may be difficult of proof, but as announced by the early case of International & G. N. Ry. Co. v. Nicholson, 61 Tex. 550, the general rule seems to be that, "As compensation for the actual loss is the fundamental principle upon which the measure of damages rests, it would seem that the value of such goods (secondhand clothing and household goods) to their owner would furnish the proper rule upon which he should recover." The above rule was quoted with approval in Wald Transfer & Storage Co. v. Giese, Tex.Civ.App., 101 S.W.2d 603, writ dismissed. Many previous decisions on the point are collated in the last cited case.

■ In Wutke v. Yolton, Tex.Civ.App., 71 S.W.2d 549, 551, writ refused, it was held that a plaintiff suing for the value of secondhand articles, was not required to plead affirmatively that the converted used furniture had no market value when the action was for the actual value to the owner; that evidence of the actual value was admissible in support of a recovery for its wrongful conversion, and that the reasonable market value was not the measure of damages in such an action. It appeared in that case that there was testimony to the effect that there was at Port Arthur a market for secondhand furniture, but that such testimony did not disclose that there was such an open market to "which one could go and buy furniture of the same character and quality, and in the same condition as was the furniture in issue." The nearest approach made in the instant case to showing that there was a market value in Wichita Falls for secondhand furniture was the testimony of defendant and another dealer to the effect that they were acquainted with the market value of secondhand furniture in that city. Defendant said in effect that it was purchased with a view to selling it and that it always involved a gamble on

finding a purchaser; that unless he could buy at a price and sell at 100% profit on such as he found sales for, he would "starve." Each of these witnesses gave market values on the goods in controversy at much less than did plaintiff in her estimates of their value to Mrs. Stewart. In the cited case, the court announces the general rule to be: "* * * the measure of damages for damage to secondhand household goods and wearing apparel is the difference in their actual value just prior to and just after the injury, and not the difference in the market value of similar goods at secondhand stores at or nearest their destination. And it seems that it is not necessary to allege or prove that such goods have no market value to predicate proof of actual value." Similar discussions are found in Pittman v. Fort Worth Warehouse & Storage Co., Tex.Civ.App., 258 S.W. 1105; Lawson v. Townsend, Tex.Civ.App., 25 S.W.2d 170, writ dismissed; Sun Insurance Office, Ltd. v. Dunn, Tex.Civ.App., 79 S.W.2d 1109. These cases cite many earlier decisions to which we also refer.

We have discussed the first point somewhat at length for the reason that as we view the record we think it is largely the controlling question in this appeal. Under the circumstances involved, and the theory upon which the case was tried, we have concluded that no reversible error was committed in the admission of the testimony by plaintiff as to intrinsic values of the property to Mrs. Stewart, hence the point of error is overruled.

Point two asserts error in the submission to the jury of issues Nos. 2, 3 and 4.

Issue Number 2 inquired if, immediately after defendant purchased the furniture from Mrs. Stewart, he was notified by someone of Maud Stewart's mental condition? The jury answered in the affirmative. Issue Number 3 was submitted to be answered only if the jury had answered Number 2 "yes." Number 3 inquired what was the fair and reasonable value of the goods to Maud Stewart on January 12, 1944 (the date of sale and purchase). The answer was "$625.00." Issue Number 4 was submitted conditioned that it need not be answered if they had answered Number 2 "Yes." Hence Number 4 was not answered. Defendant does not discuss in his brief Issue Number 4 and we need make no further reference to it.

It is argued that Issue Number 2 should not have been given because, (a)

it was upon the weight of the testimony, (b) there was no time limit, as set out in the issue, when defendant was notified of Mrs. Stewart's mental condition, if he was so notified, and (c) there was no testimony authorizing the submission of such issue. His objections urged to submitting Issue Number 3 were that it submitted the wrong measure of damages, and, further, because there was no testimony of probative force as to the value of the furniture to Mrs. Stewart.

There was testimony offered by plaintiffs that a sister of Mrs. Stewart called defendant on the telephone, either the day he purchased the articles or the next day (the record is not clear as to which day), and told defendant, in effect, that Mrs. Stewart was not mentally competent to make a sale of her household goods, and requested him not to sell or dispose of the property, that witness was calling Mrs. Taylor, the daughter of Mrs. Stewart, to inform her of the sale by her mother. Defendant told the witness that he had sold the electric refrigerator and the witness wanted him to get it back and requested that he not sell any more; defendant said in substance that he would see about it. Mrs. Taylor, one of the plaintiffs here, received the telephone message at Corpus Christi and started by bus at once to Wichita Falls and within a week from the date of sale called on defendant; she told defendant of her mother's mental condition and requested the return of the goods and tendered him in cash $130, to cover what he had paid and interest on it, she said. Mrs. Taylor testified that after she had explained it to defendant and tendered him the money, he declined to accept the money and to return the goods. We fail to see how the inquiry in Issue Number 2 could be said to be upon the weight of the testimony. It is argued that since the issue inquired whether or not someone "immediately" informed defendant of the condition of Mrs. Stewart's mind, there was no explanation or time limit set out in the inquiry when defendant was advised of Mrs. Stewart's incapacity to contract. As indicated above, defendant had on hand all of the goods except the electric refrigerator when he was first notified and he thereafter disregarded that information, and it would become immaterial, as to the time at least, as to all of the goods then on hand and not sold. There is another reason why we believe no error is presented in submitting the issue; the al-

legations and proof regarding defendant's notice and subsequent acts were made and offered in connection with plaintiffs' claim for exemplary damages, and his notice and declination to return the goods had nothing to do with his liability for having converted the articles when he actually purchased them from Mrs. Stewart.

Under this point it is contended that Issue Number 3 submitted the wrong measure of damages. We have already indicated that we believe the testimony offered as to values to Mrs. Stewart was admissible and covered the correct measure of damage, and that the measure of damages was not the reasonable market value at that time and place, as contended for by defendant. We therefore overrule the whole of Point Two.

Point Three is not discussed in defendant's brief. It complains of the submission of an issue, the answer to which it appears the court, on motion, disregarded in the judgment. The elimination of that answer inured to defendant's advantage and naturally he has abandoned the point.

We pass Point Four for the present. Point Five complains because the court refused to submit to the jury defendant's requested issue inquiring if he, at the time he purchased the goods, knew or could have known by the exercise of reasonable diligence, that Maud Stewart did not have sufficient mental capacity to understand the nature and effect of her contract of sale.

Apparently it was the theory of defendant that he was an innocent purchaser of the goods, for value and without notice of any infirmities of Mrs. Stewart to make a binding contract of sale.

The record indisputably shows that in April, 1932, Mrs. Stewart was adjudged to be a person of unsound mind, by a court of competent jurisdiction, and was committed to a State Institution. There is no evidence of any kind tending to show that such judgment, decree and commitment, have been contested, appealed from, changed or modified. The record also shows that Mrs. Lillian Taylor, one of the plaintiffs in this case, was appointed guardian of the person and estate of Mrs. Stewart on July 5, 1944, and has fully qualified as such.

As we construe the applicable law in such cases, the adjudication of Mrs. Stewart as a person of unsound mind in 1932, affords prima facie proof of her insanity at that time and that she has continuously been insane since that time, and the presumption of insanity will continue so long as she lives or until such time as it shall be judicially determined that she has been restored to sanity under our "restoration" statutes. Mitchell v. Inman, Tex.Civ.App., 156 S.W. 290, writ refused; Bogel v. White, Tex.Civ.App., 168 S.W.2d 309, writ refused, want of merit, and authorities cited in last case. We also believe that the prima facie evidence of insanity at all times subsequent to the adjudication is subject to rebuttal by competent proof, and that a party who asserts the unfortunate one has been restored, has the burden of rebutting the prima facie presumption above mentioned. If such contesting party offers competent testimony of restoration, a fact issue is raised and should be submitted to the jury, if one is requested. It is a defensive issue and he must request the submission of that issue, and if he does not so request it, he will be deemed to have waived it.

It is the universal rule in this state that contracts made by minors and persons of unsound mind are not void but voidable only; they may be ratified if the party becomes competent to do so. 24 Tex. Jur. 380, sect. 7. In Lewis v. Blount, Tex. Civ.App., 139 S.W. 7, the same rule was announced. It was there held that a deed of conveyance made by a person of unsound mind could thereafter be attacked by the grantor, and the land recovered as against an innocent purchaser. Applicable to the instant case: If a grantor of unsound mind can avoid his conveyance and recover land conveyed from an innocent purchaser who acquired it during the time the grantor was laboring under disabilities, we can see no difference in that and a rule that will permit the legal guardian of an insane person, who has not been shown to be restored, to recover from the purchaser either the property purchased, or its value for conversion.

In Mitchell v. Inman, Tex.Civ.App., 156 S.W. 290, writ refused, it was held to be the general rule that a conveyance by an insane person is not void but only voidable, and the fact that the grantee did not know of the insanity of the grantor and paid value therefor, and thus claimed to be an innocent purchaser, presented no defense to the action for avoiding the conveyance. In that case the trial court sustained special exceptions to the pleadings of defendant urging the defense of an innocent pur-

chaser, and the appellate court affirmed the holding.

■ The requested issue, which forms the basis for Point Four under consideration, would not, if given, afford defendant any justification or defense to plaintiffs' action for conversion of the goods, and in so far as that phase of the case is concerned, was properly refused. The good faith and belief of defendant that he had a right to purchase the goods from Mrs. Stewart would only be material to his defense against exemplary damages. We shall now discuss that part of the judgment and defendant's defenses thereto.

Point Four raises the alleged error of submission by the court of the item of exemplary damages. Under the point, defendant urges that neither the pleading nor the evidence warrants the submission of that issue to the jury.

We have concluded that the point is well taken. The pleadings, as above indicated, claim damages to the extent of the reasonable value of the household goods alleged to have been converted by defendant when he purchased them on January 12, 1944. Plaintiffs pray for those damages. Following these allegations plaintiffs allege, substantially, that they are entitled to exemplary damages because thereafter, when Mrs. Taylor notified defendant that her mother was mentally incompetent to make contracts and tendered back the purchase money, "said Bolton (defendant) fraudulently, maliciously, and wrongfully retained possession of said articles of furniture, and converted same to his own use, with the fraudulent purpose and scheme to deprive the said Maud Stewart and the plaintiffs of the real, true and reasonable value of said articles and to convert said articles into money for his own use and benefit, * * *." On these allegations plaintiffs prayed for exemplary damages.

It will be noted that the conversion was complete when defendant purchased and received the goods. As applicable to exemplary damages, there are no allegations that in such purchase the defendant acted with malice, or a wanton disregard for the property rights of plaintiffs and Mrs. Stewart, but the claim is based solely upon defendant's subsequent acts in declining to accept the purchase money and return such of the goods as he then had on hand. In other words, the grounds for exemplary damages are based on acts subsequent to the time of the original transaction between defendant and Mrs. Stewart.

In Connor v. Sewell, 90 Tex. 275, 38 S. W. 35, the court had under consideration whether or not it had jurisdiction on application for writ of error. The pleadings in the trial court sought actual damages in the sum of $575, which amount fell within the jurisdiction of the county court. Under these conditions, it was held that the Supreme Court would be without jurisdiction unless there be proper allegations of exemplary damages to raise the amount in controversy to the exclusive jurisdiction of the district court. It was also held that the allegations of the alleged wrongful acts which gave rise to the suit for compensatory damages must be shown to have been accompanied by some evil intent, or the result of gross negligence, that is, such disregard for the rights of another that will be regarded as an evil intent.

In Texas & N. O. Ry. Co. v. Adams, Tex. Civ.App., 27 S.W.2d 331, writ dismissed, it was held that to justify exemplary damages the defendant must be shown to have been actuated by malice or the wilful intent to injure. We repeat—the thing complained of in this case is the purchase of the furniture by defendant from Mrs. Stewart.

■ In Texas & N. O. Ry. Co. v. Adams, supra, it was held that in doing the thing complained of it must be shown that the defendant was actuated by malice or a wilful intent to injure the other party. The thing complained of in the instant case was the wrongful purchase by defendant from Mrs. Stewart of the articles of furniture at a time when she was mentally incompetent to make a binding contract; whereas, the petition discloses that the wrong for which plaintiffs seek exemplary damages was the "malicious" act of defendant in retaining the goods when he had information of Mrs. Stewart's mental condition. No exemplary damages can be recovered for an act upon which no compensatory damages are sought or recovered. 13 Tex.Jr. 240, sect. 132.

■ It is the recognized rule in this state that exemplary or punitive damages are recoverable only when they grow out of a wrong accompanied by some aggravating circumstances of malice, fraud, gross negligence, or the like. To sustain a judgment for exemplary damages, it is not sufficient to show that the defendant could

or should have foreseen and prevented the loss or injury of which the plaintiff complains, but that defendant acted intentionally or wilfully or with a degree of gross negligence which indicates a fixed purpose by defendant to bring about the injury of which plaintiff complains. Bennett v. Howard, 141 Tex. 101, 170 S.W.2d 709.

In Erie Telegraph & Telephone Co. v. Kennedy, 80 Tex. 71, 15 S.W. 704, 705, where it was held that no exemplary damages should be recovered, the court said: "* * * although an act may be intentional, and may result in a wrong, yet exemplary damages should not be awarded, when it appears that there was no actual intention to invade any right." Certainly defendant's act in purchasing the household goods was intentional on his part, as distinguished from accidental, but we fail to see from the evidence anything to indicate malice or an intention to oppress or aggravate the property rights of plaintiffs.

It appears that the defendant had no actual knowledge of Mrs. Stewart's former adjudication of insanity some twelve years previously; he had dealt with her as a customer of his store for all those years; had sold her many articles to be paid for by the month and she had always met her obligations, although sometimes delayed; he saw nothing about her conduct to indicate that she was not mentally sound. Although his contracts with her were voidable at her will or that of her legal representative, we see no evidence of an intention on defendant's part to defraud Mrs. Stewart out of her property at the time he purchased it, unless it could be said that he bought it for less than it was worth. There is testimony in the record that it was not uncommon for persons whose mentality could not be questioned, to sell their household goods for less than they were worth, when they were leaving the city and could not find it profitable to take the property also. There is yet another reason which may indicate that Mrs. Stewart had been permitted by those interested in her welfare to transact her own business, and deal with such persons as defendant. Mrs. Stewart was adjudged insane in 1932 and no guardian was appointed for her person and estate until early in 1944, and after this suit was originally instituted. After appointment of the guardian, an amended petition was filed upon which the case was tried.

From what has been said, we believe the judgment for compensatory damages finds support in the record, but that no exemplary damages should have been awarded, and to that extent the judgment is erroneous. That part of the judgment awarding exemplary damages is reversed and rendered that plaintiffs take no exemplary damages; the remainder of the judgment for $500 compensatory damages is affirmed.

Because of the disposition we have made of this appeal, the costs of appeal will be taxed one-half against plaintiffs and one-half against defendant. Affirmed in part and reversed and rendered in part.