

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

Affirmed by $C - 4$

**WILL WILSON**
**ATTORNEY GENERAL**

February 24, 1960

Mr. John H. Winters
Commissioner
Department of Public Welfare
Austin, Texas

Opinion No. WW-796

Re: Questions concerning
the legal determination
of restoration of recip-
ients of public assist-
ance, who have been
judicially declared to
be of unsound mind or
mentally incompetent,
under provisions of the
Texas Mental Health Code.

Dear Mr. Winters:

You have requested an opinion of this office relative
to the effect of a discharge from a mental hospital of a
patient who has been theretofore adjudicated by a court to
be mentally incompetent. The questions call for an interpre-
tation of certain provisions of the Texas Mental Health Code
(House Bill No. 6, Acts of the 55th Legislature, Regular Session,
1957, Chapter 243, page 505, Codified as Articles 5547-1 through
5547-104 of Vernon's Annotated Civil Statutes, which became
effective January 1, 1958).

Specifically, you asked the following questions:

"1. If the person was adjudged to be
of unsound mind or mentally incompetent by
a court prior to the effective date of House
Bill No. 6, Acts of the 55th Legislature,
Regular Session, 1957 (January 1, 1958) and
was discharged from the state hospital prior
to that date, is the certificate from the
superintendent of the state hospital suffi-
cient to restore the civil rights of that
individual so that he may receive, endorse,
and expend his public assistance check with-
out a guardian or without a judicial deter-
mination of his restoration?

"2. If the person was adjudged to be
of unsound mind or mentally incompetent by

a court prior to the effective date of House Bill No. 6 and was discharged by the state hospital after the effective date of House Bill No. 6, is the certificate from the superintendent of the state hospital sufficient to restore the civil rights of that individual so that he may receive, endorse, and expend his public assistance check without a guardian or without a judicial determination of his restoration?

"3. If a person was adjudged to be 'mentally incompetent' by a court after the effective date of House Bill No. 6 and was discharged from the state hospital after that date, is the certificate from the superintendent of the state hospital sufficient to restore the civil rights of that individual so that he may receive, endorse, and expend his public assistance check without a guardian or without a judicial determination of his restoration?"

You inform us in your opinion request that it has been the policy of the Department of Public Welfare to require, with respect to all three classes of persons above mentioned, either the appointment of a guardian for the incompetent, or an order of restoration from the court, as a prerequisite to the making of public assistance payments. It is observed that the Department adopted such policy merely in pursuance of its general duty and authority to administer programs of public assistance effectively and in accordance with the purposes of the respective enabling statutes, purposes which would doubtless be thwarted in case of a recipient who was, for some reason, incapable of receiving and disposing of his assistance check in a reasonable and responsible manner. Since such policy apparently does not stem from an express prohibition, Federal or State, against making payments of public assistance funds to persons deemed to be incompetent, the following opinion is confined to the legal effect of a discharge of a person from a mental hospital, under the Texas Mental Health Code.

Your questions deal with two subjects: the appointment of guardians for incompetents, and the restoration of the civil rights of incompetents. First, we will briefly dispose of the question insofar as it relates to the appointment of guardians.

Neither the adjudication, commitment to a state hospital, nor a discharge therefrom, under and by virtue of any provision of the Texas Mental Health Code, has any effect upon the appointment of a guardian. Guardianship matters are controlled by the provisions of the Texas Probate Code, (Sections 108, et seq, and 415, et seq). The Texas Mental Health Code specifically provides, in Section 5547-84, as follows:

> "No action taken or determination made under this code and no provision of this code shall affect any guardianship established in accordance with law."

(See also Attorney General's Opinion No. WW-330 for a further discussion of guardianship matters.)

It might be noted, however, that the Texas Probate Code now authorizes the appointment of a guardian, not only for "incompetents", but also, "for persons where it is necessary that a guardian be appointed to receive funds from any governmental source or agency" (Section 4, Texas Probate Code). And Section 114 of the Texas Probate Code, in setting out the facts which must exist before a guardian may be appointed, provides in the case of "a person for whom it is necessary to have a guardian appointed to receive funds due such person from any governmental source" that, "a certificate of the executive head, or his representative of the bureau, department, or agency of the government through which such funds are to be paid, to the effect that the appointment of a guardian is a condition precedent to the payment of any funds due such persons, shall be prima facie evidence of the necessity for such appointment." Thus, the same facts relative to the mental competency of a person, as determined by the head of a mental hospital, might also be used as evidentiary facts in a guardianship proceeding brought under the provisions of the Texas Probate Code.

Secondly, your question concerns restoration to mental competency or sanity of a person thereto adjudicated by a court to be mentally incompetent or of unsound mind. Prior to the adoption of the Mental Health Code, it was well settled that the adjudication by a court that a person was of unsound mind, or mentally incompetent, established the status of that person as of that time, and that such adjudication gave rise to a presumption that such person so adjudicated continued to be of unsound mind, or mentally incompetent, until such presumption might later be rebutted in a proceeding brought for that purpose. (That is, brought un-

der the so-called restoration statutes.)  This rule was stated in the case of Elliott v. Elliott, 208 S.W.2d 790 (Civ.App. 1948, error ref. n.r.e.) as follows:  "The implication of the holdings in Williams v. Sinclair-Prairie Oil Co., 135 S.W.2d 211 (Civ.App. 1939, error ref., judgm. cor.); Bogel v. White, 168 S.W.2d 309 (Civ. App. 1943, error ref. w.o.m.); Bolton v. Stewart, 191 S.W.2d 798 (Civ.App. 1945); and Joy v. Ivy, 194 S.W.2d 411 (Civ.App. 1946), is that an adjudication of insanity by the county court raises a continuous rebuttable presumption of insanity, and that only a judgment of restoration of sanity, entered in a proceeding brought for that purpose, will be sufficient to conclusively remove such rebuttable presumption."

The question raised now is, did the Texas Mental Health Code change the above law?  The applicable provisions of the Texas Mental Health Code on the matter are as follows:

"Art. 5547-81.  Effect of Discharge

(a)  . . .

(b)  The discharge of a patient who has been found to be mentally incompetent terminates the presumption that he is mentally incompetent."
(Acts 1957, 55th Legislature, page 505, Chapters 2 and 3.)

Art. 5547-82 of the Texas Mental Health Code provides a procedure for a hearing and an adjudication of the question of restoration and discharge of a patient still committed to a mental hospital.  /It might be noted here that subsection (e) of this Article which provided, "The hearing shall be before the court without a jury" was held to be unconstitutional in the case of Swinford v. Logue, 313 S.W.2d 547 (Civ.App. 1958, writ dism. on application of petitioner)._/

And finally, Article 5547-83, (as amended by Acts 1959, 56th Legislature, page 887, Chapter 409) now provides as follows:

"(a)  The judicial determination under this Code that a person is mentally incompetent creates a presumption that the person continues to be mentally incompetent until he

is discharged from the mental hospital
or until his mental competency is re-
determined by a court.

(b)  The judicial determination that
a person is mentally ill or the admission
or commitment of a person to a mental hos-
pital, without a finding that he is men-
tally incompetent, does not constitute a
determination or adjudication of the men-
tal competency of the person and does not
abridge his rights as a citizen or affect
his property rights or legal capacity.

(c)  When any person under the pro-
visions of this Code shall have been com-
mitted as a patient to a mental hospital
for any period, regardless of duration, by
order of a county court, and shall have
been discharged and released by such hos-
pital, such person may file application
with such county court for an order adju-
dicating that he is not now mentally ill
or incompetent, to which application shall
be attached a certification attesting to
such facts, signed by an attending physi-
cian at the hospital to which such patient
was committed.  The court may enter an
order granting such application; but, in
connection therewith, he may conduct a
hearing and summon such witnesses as in
his judgment may be necessary to satisfy
him as to the merits of the application."
As amended Acts 1959, 56th Leg., p. 887,
ch. 409, § 1.

Subsections (a) and (b), supra, were contained in the ori-
ginal Code as adopted in 1957, (effective January 1, 1958),
but subsection (c) was added in 1959.  Such subsection pro-
vides a procedure for an order of the court adjudicating
that he is not now mentally ill or incompetent after dis-
charge from a mental hospital.

It is the opinion of this office that, under the
Texas Mental Health Code, a discharge from a mental hospi-
tal, does not, in itself, effect a restoration of a mentally
incompetent person.  Such act, that is, a discharge from the
mental hospital, merely "terminates the presumption that he
is mentally incompetent."  An action in the county court is
still necessary to adjudicate that question.  The Code, as

Mr. John H. Winters, page 6 (WW-796)

amended in 1959, specifically sets out the procedure for
such adjudication after discharge from the mental hospital.
The emergency clause of the above quoted Article 5547-83,
provided: "Sec. 3. The fact that there is not now any pro-
vision for judicial restoration of persons adjudged mentally
incompetent under the Texas Mental Health Code, creates an
emergency . . . etc." Had the Legislature intended that a
discharge from the hospital to be tantamount to a restora-
tion, then subsection (c), supra, would be superflous.

All three of your inquiries ask the common question:
"Is the discharge and the certificate from the superintend-
ent of the hospital sufficient to restore the civil rights
of that individual . . .?" The answer, as to all three
situations, is: The discharge and the certificate of the
superintendent does not, in itself, affect such restoration.
Such acts merely terminate the presumption of mental incom-
petency existing by reason of the original adjudication.
There is a distinction between an adjudication of a fact by
a court (i.e., a restoration), on the one hand, and a
"termination of a presumption" by an act of the head of a
hospital, on the other hand.

With respect to the time when such acts took place
(that is, the time of the original adjudication and dis-
charge), and whether the old law or the new Code would apply,
you are referred to Article 5547-100, which provides:

"This Code applies to any conduct, trans-
action or proceeding within its terms which
occurs after the effective date of this Code,
whether the patient concerned in the conduct,
transaction or proceeding was admitted or com-
mitted before or after the effective date of
this Code. In particular, the discharge under
this Code of any patient committed to a mental
hospital under the prior law terminates any
presumption that he is mentally incompetent.
However, a proceeding for the commitment of a
person to a State mental hospital begun before
the effective date of this Code is governed by
by the law existing at the time the proceeding
was begun and for this purpose the law shall be
treated as still remaining in force. Unless
these proceedings are completed within nine
(9) months after the effective date of this
Code they shall be governed by the provisions
of this Code." Acts 1957, 55th Leg., p. 505,
ch. 243, § 100.

Thus when a person was adjudicated mentally incompetent (or unsound mind) and discharged, both prior to the effective date of the Texas Mental Health Code (your question No. 1), the Code is not controlling since it states in express terms that the Code applies to any conduct, transaction or proceeding within its terms which occurs after the effective date. The Code would apply to the fact situations stated in your questions 2 and 3, since it states as follows: "This Code applies to any conduct, transaction or proceeding within its terms which occurs after the effective date of this Code, whether the patient concerned in the conduct, transaction or proceeding was admitted or committed before or after the effective date of this Code . . ."

We now allude briefly to the two examples of Certificates of Discharge mentioned in your letter. Such Certificates are provided for in Article 5547-80, subsection (d), which provides:

"Upon the discharge of a patient, the head of the mental hospital shall prepare a Certificate of Discharge stating the basis therefor . . ."

We agree that, in at least one example, the superintendent did not purport to express an opinion as to the patient's restoration or recovery. However, it is the fact of the discharge from the hospital, and not the issuance of such Certificate, which has the effect of terminating the presumption of mental incompetency. Subsection (b) of Article 5547-81 states, "the discharge of a patient who has been found to be mentally incompetent terminates the presumption that he is mentally incompetent." In this connection, Article 5547-9 of the Code authorizes the Board for Texas State Hospitals and Special Schools to, "prescribe the form of applications, certificates . . . provided under this Code and the information required to be contained therein."

## SUMMARY

(1) A person judically declared to be of unsound mind and committed to a State hospital, and subsequently discharged therefrom, all prior to the effective date of the Texas Mental Health Code (January 1, 1958), in order to be restored to legal competency, must proceed in the

county court in a restoration pro-
ceeding now provided by law
/Article 5547-83, Section (3) of the
Code/, and his discharge has no le-
gal effect upon the evidence or proof
required to determine his mental
status.

(2) A person adjudicated by a court to
be mentally incompetent, whether
before or after the effective date
of the Texas Mental Health Code, and
discharged from the mental hospital
after the said date (January 1, 1958),
must likewise proceed, in court, as
provided in Article 5547-83, Section
(c), to be legally adjudicated mentally
competent, but such person would be
presumed to be mentally competent.

Very truly yours,

WILL WILSON
Attorney General of Texas

By _____
Elmer McVey
Assistant

EMcV:jf:pm

APPROVED:

OPINION COMMITTEE

W. V. Geppert_____, Chairman

Cecil C. Cammack, Jr.___

Marvin H. Brown, Jr.___

Jot Hodges, Jr._____

Leon F. Pesek_____

REVIEWED FOR THE ATTORNEY GENERAL
BY: Leonard Passmore_____