Affirms Opinion
#WW - 796



# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

January 23, 1963

Dr. Sam A. Hoerster, Jr.　　Opinion No. C-4
Superintendent
Austin State Hospital　　Re: The effect of discharge from a
Austin, Texas　　　　　　　mental hospital of a patient who
　　　　　　　　　　　　　　has been adjudicated by a court
Dear Dr. Hoerster:　　　　to be mentally incompetent.

　　　　You have requested an opinion from this office concerning the effect of discharge from a mental hospital of a patient who has been theretofore adjudicated by a court to be mentally incompetent.

　　　　This office held in Attorney General's Opinion No. WW-796 (1960) that:

　　　　　　". . . a discharge from a mental hospital, does not, in itself, effect a <u>restoration</u> of a mentally incompetent person. Such act, that is a discharge from the mental hospital, merely 'terminates the presumption that he is mentally incompetent.' An action in the county court is still necessary to <u>adjudicate</u> that question. . . ."

　　　　This holding in Attorney General's Opinion No. WW-796 (1960) was made upon the question of:

　　　　　　"3. If a person was adjudged to be 'mentally incompetent' by a court after the effective date of House Bill No. 6 and was discharged from the state hospital after that date, is the certificate from the superintendent of the state hospital sufficient to restore the civil rights of that individual so that he may receive, endorse, and expend his public assistance check without a guardian or without a judicial determination of his restoration?"

　　　　The background information concerning the question posed in Attorney General's Opinion No. WW-796 (1960) is most important and a portion thereof is set forth as follows:

　　　　　　". . . it has been the policy of the Department of Public Welfare to require, with respect to all three classes of persons above mentioned, either the appointment of a guardian for the incompetent, or an <u>order of restoration from the court</u>, as

-9-

a prerequisite to the making of public assistance payments.  It is observed that the Department adopted such policy merely in pursuance of its general duty and authority to administer programs of public assistance effectively and in accordance with the purposes of the respective enabling statutes, purposes which would doubtless be thwarted in case of a recipient who was, for some reason, incapable of receiving and disposing of his assistance check in a reasonable and responsible manner. Since such policy apparently does not stem from an express prohibition, Federal or State, against making payments of public assistance funds to persons deemed to be incompetent, the following opinion is confined to the legal effect of a discharge of a person from a mental hospital, under the Texas Mental Health Code."  (Emphasis added).

It has been suggested that there was a failure in Attorney General's Opinion No. WW-796 (1960) to consider the applicability of Article 5547-100, Vernon's Civil Statutes, pertaining to the question of competency.  In addition, it has been suggested that there is a specific difference in the wording between Article 5547-83, Vernon's Civil Statutes, and Article 5547-100, Vernon's Civil Statutes, as to the definitive nature of terminating incompetency.

Article 5547-100 of the Mental Health Code provides in part that:

". . . the discharge under this Code of any patient committed to a mental hospital under the prior law terminates any presumption that he is mentally incompetent. . . ."

Article 5547-83 of the Mental Health Code provides in part that:

"(a)  The judicial determination under this Code that a person is mentally incompetent creates a presumption that the person continues to be mentally incompetent until he is discharged from the mental hospital or until his mental competency is re-determined by a court.

". . .

"(c)  When any person under the provisions of this Code shall have been committed as a patient to

a mental hospital for any period, regardless of duration by order of a county court, <u>and shall have been discharged and released by such hospital, such person may file application with such county court for an order adjudicating that he is not now mentally ill or incompetent</u>, to which application shall be attached a certification attesting to such facts, signed by an attending physician at the hospital to which such patient was committed. <u>The court may enter an order granting such application</u>; but, in connection therewith, he may conduct a hearing and summon such witnesses as in his judgment may be necessary to satify him as to the merits of the application."
(Emphasis added).

Article 5547-81, Vernon's Civil Statutes, provides that:

".  .  .

"(b)  The discharge of a patient who has been found to be mentally incompetent terminates the presumption that he is mentally incompetent."

Article 5547-83 was amended by the Legislature in 1959 (House Bill 364, Acts of 1959, 56th Leg., Regular Session, chap. 409, page 887), and section (c), set forth above, was added to the existing provisions of Article 5547-83. The emergency clause in House Bill 364 provides that:

"The fact that there is not now any provision for judicial restoration of persons adjudged mentally incompetent under the Texas Mental Health Code, creates an emergency. . . ."

As was stated in Attorney General's Opinion No. WW-796 (1960), prior to the adoption of the Mental Health Code it was well settled that the adjudication by a court that a person was of unsound mind or mentally incompetent, established the status of that person as of that time, and that such adjudication gave rise to a presumption that such a person so adjudicated continued to be of unsound mind, or mentally incompetent, until such presumption might later be rebutted in a proceeding brought for that purpose.

In the case of <u>Elliott v. Elliott</u>, 208 S.W.2d 709 (Civ. App. 1948, error ref. n.r.e.), it was stated by the Court that:

"The implication of the holdings in <u>Williams</u>
<u>v. Sinclair-Prairie Oil Co.</u>, 135 S.W.2d 211 (Civ.
App. 1939, error ref., judgm. cor.); <u>Bogel v.</u>
<u>White</u>,  168 S.W.2d 309 (Civ.App. 1943, error ref.
w.o.m.); <u>Bolton v. Stewart</u>, 191 S.W.2d 798 (Civ.
App. 1945); and <u>Joy v. Ivy</u>, 194 S.W.2d 411 (Civ.
App. 1946), is that an adjudication of insanity
by the county court raises a continuous rebuttable
presumption of insanity, and that only a judgment
of restoration of sanity, entered in a proceeding
brought for that purpose, will be sufficient to
conclusively remove such rebuttable presumption."

Article 5547-81, Article 5547-83(a), and Article 5547-100 were contained in the original enactment of the Mental Health Code and clearly indicate that it was the intention of the Legislature that the discharge of a patient from a mental hospital should merely terminate the <u>presumption</u> that he is still mentally incompetent. However, if the Legislature had intended that such discharge was also to act as a restoration of sanity or competency, the enactment of Article 5547-83(c), which provides for adjudicating that one who has been committed to a mental hospital and thereafter released is no longer mentally ill or incompetent, would be unnecessary.

Insofar as the phrase contained in Article 5547-100, to the effect that ". . .  the dishcarge under this Code of any patient committed to a mental hospital under the prior law terminates any presumption that he is mentally incompetent. . . .", is concerned, we are of the opinion that a consideration of this phrase would in no way change the result reached in Attorney General's  Opinion No. WW-796 (1960). The previously quoted portion of Article 5547-100 merely indicates that the effect of discharge from a mental hospital of one committed prior to the enactment of the Mental Health Code will be the same as the discharge of a person committed after the enactment of the Mental Health Code.

Consequently, we are of the opinion that a discharge from a mental hospital does not, in itself, effect a <u>restoration</u> of a mentally incompetent person. The discharge of a person from a mental hospital merely terminates the <u>presumption</u> that such person is mentally incompetent. Therefore, we hereby re-affirm the holding reached in Attorney General's Opinion No. WW-796 (1960).

As was mentioned heretofore, the result reached in Attorney General's Opinion No. WW-796 (1960) was confined merely to the legal effect of a discharge of a person from a mental hospital under the Texas Mental Health Code, and did not deal with the issue of what requirements as to mental competency that the

Department of Public Health might decide were necessary, as a policy matter, prior to the making of welfare payments to a person who had previously been committed to a mental hospital.

## SUMMARY

Under the Texas Mental Health Code a discharge from a mental hospital does not, in itself, effect a restoration of a mentally incompetent person. Such discharge merely terminates the presumption that he is mentally incompetent. Insofar as pertinent Attorney General's Opinion No. WW-796 (1960) is re-affirmed.

Yours very truly,

WAGGONER CARR
Attorney General of Texas

By        Pat Bailey
          Assistant

PB:wb

APPROVED:

OPINION COMMITTEE

W. V. Geppert, Chairman
Scott Garrison
Ernest Fortenberry
Scranton Jones

APPROVED:

Stanton Stone
Executive Assistant

APPROVED:

Waggoner Carr
Attorney General