**BOGEL et al. v. WHITE.**

**No. 11445.**

Court of Civil Appeals of Texas. Galveston.

Nov. 19, 1942.

Rehearing Denied Jan. 28, 1943.

Austin S. Dodd, of Dallas (Clark A. Holloway, of Clarksville, of counsel) for appellants.

B. F. Edwards, of Clarksville, for appellee.

GRAVES, Justice.

This appeal is from a judgment of the 102nd District Court of Red River County, sitting without a jury, substantially to this effect: (1) Denying the claim of appellant, Mrs. Bogel, that she had been entitled by statutory prior-right over the appellee, to appointment as administratrix of the estate of Zach T. Lewis, deceased; (2) confirming the appointment, instead, of the appellee as such administrator by the county court of Red River County; (3) validating all other proceedings had in that probate court in the administration of such estate, inclusive of the confirmation of the sale by such administrator of 209 acres of land belonging to such estate; and (4) refusing to admit to probate, as the valid will of such Zach T. Lewis, deceased, two letters declared upon by appellant as having constituted the holographic will of Lewis, duly executed by him during his lifetime, the court's expressed reason for denying the probate of such letters having been this: "The court is of the further opinion that the instruments sought to be probated by the proponent and plaintiff, Mrs. Ursula Bogel, as the last will and testament of the said Zach T. Lewis, dated March 15, 1927, should not be admitted to probate, for the reason that at the time of the execution thereof the said Zach T. Lewis was insane and did not possess testamentary capacity to execute a valid and legal will."

On appeal Mrs. Bogel, claiming as the niece and designated beneficiary in the alleged holographic will, states some five points for a reversal: contending (1) that the deceased's confinement in the Texas State Hospitals for the Insane from 1915 until his death in 1937 was illegal, hence did not raise any presumption that he lacked testamentary capacity in 1927 (when he executed the holographic will declared upon), because that confinement had been founded upon a void judgment rendered on a finding of insanity by a jury of six physicians, the supporting statute itself

having thereafter been declared unconstitutional by the Supreme Court of Texas; (2) that the uncontradicted evidence showed Zach T. Lewis to have had testamentary capacity at the time he wrote the two letters of March 15, 1927, so claimed to constitute his holographic will; (3) that it was mandatory upon the trial court to grant her declared-upon-application for letters of administration on the estate of Lewis, regardless of whether the alleged will were admitted to probate, there having been no showing before the court that anyone else had a higher right for such letters than herself, nor that she had either been disqualified or had in open court or by written power-of-attorney, renounced her right to any other qualified person; (4) the court erred in approving such report of sale of the 209 acres of land, as same had been ordered by the probate court, perforce of appellant's improperly-overruled showing that she herself had had a prior right to appointment as administratrix over such appellee; (5) the written statement from the Superintendent of the State Hospital for the Insane at San Antonio, reciting that Zach T. Lewis had been released from that hospital on January 1 of 1911, "as restored", should have been admitted at this trial below, when offered by herself, as the proponent of the claimed will, as against the sole objection thereto that it was hearsay evidence.

In the undisputed state exhibited by this record upon all the issues as those of law, it is determined that none of her contentions should be sustained.

Two different proceedings from the probate court embodying its rulings in the Lewis estate had been consolidated by the district court and tried there as one; moreover, the district court appears to have heard all over again the appellant's particular claims that she had had by virtue of R.S. Article 3357 a preference-right to be appointed administratrix of deceased's estate, and that the letters she sued upon constituted his holographic will; after doing so, the court in its judgment complied, in substance, with appellant's request that it also file findings of fact and law; these findings of both sorts have already been implemented into the statement, supra.

It would serve no needful purpose to re-state the sequence of occurrences appellant grounded her appeal in this court upon, for the indicated reason that, in the opinion of this court, the record before it

does not support the claimed factual-basis, as she saw it—quite the contrary.

In the first place, the record shows without controversion that Mr. Lewis had been convicted of insanity, or, to use the exact language of the decree, "of being a lunatic", by the county court of Red River County on July 20, of 1910, his brother, B. C. Lewis, having in that proceeding been appointed guardian of his estate; that no appeal from that judgment had been prosecuted by any party thereto, that it was regular in all respects, and that no proceedings had ever thereafter been instituted by any person to restore his sanity, even up to the time of his death in 1937; neither had any court-effort ever been made to remove B. G. Lewis, the guardian, from his then-appointment.

On such conviction of lunacy Zach T. Lewis had been admitted, on August 4 of 1910, as a patient in the State Hospital for the Insane, at San Antonio, and, with the exception of a few years, he had been an inmate of different Texas State Hospitals for the Insane from the date of that first conviction in 1910 until he died in the North Texas Hospital for the Insane, at Terrell, on October 21 of 1937.

Indeed, the appellant herself adduced the facts so stated; it also seems to be true that he was released from the San Antonio Hospital on January 1 of 1911, but was re-committed to that institution on April 13 of 1915, following a further trial as to his sanity before a committee of six physicians, under the statute then in effect, but which law the Supreme Court, in 1917, declared unconstitutional, in the case of White v. White, 108 Tex. 570, 196 S.W. 508, L.R.A. 1918A, 339. It was upon that holding that appellant grounded her first point on this appeal.

■ This court, however, fails to see how the 1915 re-trial of the deceased, however invalid it may have later turned out to have been, could have obliterated the still-subsisting judgment of insanity generally against him, of April 20 of 1910, which had never been contested, appealed from, nor otherwise removed; in fact, since that was a general conviction for insanity, attended by the appointment of a guardian of the lunatic's estate, rendered by a court of competent jurisdiction with full power in the premises, as this court reads the authorities, the insanity therein so determined to exist was presumed by law to continue until the unfortunate victim's status as to

sanity was changed by a subsequent judgment of a county court, in a proceeding authorized for that purpose by the "restoration" statute, Vernon's Ann.Civ.St. art. 5561a, § 4; 68 C.J., p. 452, Sec. 52; p. 453, Sec. 53, and p. 454, Sec. 54; Williams v. Sinclair-Prairie Oil Co., Tex.Civ.App., 135 S.W.2d 211; Vance v. Upson, 66 Tex. 476, 1 S.W. 179; 17 Tex.Jur., p. 582, Sec. 242; Navarro v. Garcia, Tex.Civ.App., 172 S.W. 723; 68 C.J., page 478, Sec. 86.

■ Especially so, since neither this appellant, nor anyone else, during all those years subsequent to 1910 up to Lewis' death, ever sought in court to have the sanity of the man, or the guardianship proceeding on his estate, again legally tested in the county court of Red River County, or any other court of competent jurisdiction.

■ Appellant's second contention, that Lewis was shown by the uncontradicted testimony to have had testamentary capacity at the time he wrote the two letters of March 15, of 1927 she declared upon as constituting his holographic will and the designation of herself as sole beneficiary therein, seems inept, to say the least of it; indeed, as already suggested, the trial court re-examined this contention on its merits, considered the letters themselves as being evidentiary on the question of whether or not the man did have testamentary capacity at that time, and made the quoted comments in determining that he did not have it. That action was not without support in our authorities, as the citations already made show.

It is thought this inquiry may be no better concreted nor aided than to here quote the two letters. They were as follows:

"March 15, 1927

"Dear Neice:

"I sick with chills been sick week I trust you all folks well. I trust Albert he has all I had by fraud give me illegal trial have me here for my money sane since 1915 June 19 men cant look at me Judge my mind It the way I sent here illegal for my money sane record show it cant show I ever insane tried three time failed ever time record show it. Albert here see me promise let me out said I well I ask Albert tell me what I am here for my money sane record show it Albert have all I had by fraud since 1910 it what I am here for sane record show it folks aint never show I insane

Carl get best lawyer he can my Lawyer can look up my record Get me out on writ of habeas corpus test my sanity record show my sanity never tested I had know trial put here illegal record show it I never hear from any of the folks only you I will you biggest interest I have tell me what you know if Carl can do nothing know use write record show I am sane here for my money sane since 1910 I might lie You might lie record dont lie I like see you all Is Brother Perry Elmer in dallas Is Carl married If you know nothing of interest dont write

Zach T. Lewis".

"Mrs. C. C. Bogel
"3522 Northern Heights Place
"Dallas, Texas.
"March 15, 1927
"Dear Brother. I am sick I thought I well been sick week I have the chills I trust you all folks well I trust you have all I had by fraud never give me legal trial Have me here for my money sane since 1915 June 19 record show it men cant look at me Judge my mind is the way I sent here for my money sane it illegal record show it you all cant show I ever wrong. tried three times failed ever time record show it you here see me promise let me out said I well tell me what I am here for my money sane record show it you all have all I had by fraud since 1910 It what I am here for sane record show it If you all honest I not be here I had know trial record show it you all cant show I ever insane You either discharge me give me legal trial This be last chance Give my liberty I will all I had to one of my relative record show I never been judged insane record show you give me illegal trial have all I had by fraud since 1910 record show it You know I got legal trial You all know I sane record show it Discharge me save legal lawsuit you know you all cant show I ever insane tried three times failed ever time discharge me You know it save expense I be on top It be like you was in Missouri Never had never appear at trial record in Missouri show it You all know I here for my money sane You all know give me illegal trial record show it Ever one have right fair legal trial record show it I want my legal trial in time I get legal trial You all know whole business cutthroat robbery rotten beginning end record show it. High time you give either my liberty aint never show I insane It high time something doing You know I right Set me free You know if I get legal trial I get my liberty I like see you all Zach T. Lewis Give me show for my life.
"Zach T. Lewis."
"Mr. A. R. Lewis,
"Sherry, Tex."

When appellant offered before the trial court these holographic scrawls, with the prayer that it admit them to probate as the last will and testament in her favor —of a person alleged to have had testamentary capacity when executing them— as this court understands the law in Texas, such instruments stood alone upon their own bottoms, there being no accompanying presumption of the existence of any such sanity; Navarro v. Garcia, Tex.Civ.App., 172 S.W. 723, supra.

Not only did the court below, as already indicated, consider these letters themselves as evidence bearing upon the sole question then before it—that is, whether or not their author had at that very moment testamentary capacity—but it is shown to have also considered, in connection therewith, the circumstances and conditions under which the two papers had been written on the common date of both—March 15 of 1927; as a result, that court not only made its quoted findings that Lewis was then insane and did not possess testamentary capacity to execute a valid and legal will, but it further declared its opinion to be that the intrinsic effect of the two quoted documents indicated the product of a madman.

Neither, it is thought, was there adduced any sufficient testimony bearing upon that one inquiry to undermine the support of the court's finding thereon; in fact, were it necessary for this court to pass upon which way the preponderance lay upon that issue, it would hold that it fully supported, if it did not require, the court's finding that no such capacity at that time was shown.

The trial court's finding on the facts, which is thus in nowise impeached in this record, settled adversely to appellant her attack upon the appellee's status as Lewis' administrator, and her assertion of a statutory right to have been herself substituted for him in that position, to-wit: "That said Clarence M. White is the duly appointed, qualified, and acting administrator of the estate of Zach T. Lewis, deceased, and, that the preference to act as administratrix of the estate of Zach T. Lewis, deceased, held by the said Mrs. Ursula Bogel was, in open court, waived by the said Mrs. Ursula Bogel at the time of

the appointment of the said Clarence M. White as administrator, on the 7th day of February, 1941, in the probate court of Red River County, Texas, in Cause styled 'The Estate of Zach T. Lewis, Deceased', and being No. 2510 on the docket of said Probate Court."

As stated, the testimony fully supported that determination, in that it appeared therefrom that no objections were made by the appellant to the appointment of the appellee until some 3 months and 17 days after his qualification as such administrator, and 6 months and 11 days after his appointment; it is, therefore, clear from the evidence that the trial court rightly held appellant to have waived any right to act as administratrix of the deceased's estate that might otherwise have inured to her by virtue of Article 3357, Vernon's Texas Civil Statutes; 13 Tex. Jur., p. 665, Sec. 80; Article 3359, Vernon's Texas Civil Statutes; Beeman v. Jones, Tex.Civ.App., 102 S.W.2d 490, 491; Vannoy v. Gibson, Tex.Civ.App., 102 S.W.2d 492; Lee v. Earnest, Tex.Civ.App., 299 S. W. 931; Mayes v. Houston, 61 Tex. 690.

Her further insistence that the court erred in this de novo trial of the two probate-orders on appeal from the county court before it—one involving the right to letters of administration therein, the other being an appeal from the probate court's order confirming the administrator's report of the sale of 209 acres of land, is not well taken, for these among other reasons:

In the first place, these two probate court proceedings had, by agreement between the parties hereto, been consolidated for trial as one in the district court; in the second place, these claims on appellant's part are dependent upon her properly-overruled contention that she herself should have been permitted to supersede the appellee as such administrator. This conclusion is also supported by the authorities last cited.

Appellant's final complaint against the exclusion of a written statement she offered from the Superintendent of the State Hospital at San Antonio is held to be clearly without merit; that statement was this ex parte affidavit, executed by L. Barbato before Marilee Stanfield, as a notary public of Bexar County, Texas:

"September 18, 1941.

"The records of the San Antonio State Hospital show that Mr. Z. T. Lewis was admitted as a patient here August 4, 1910, after having been adjudged insane in Red River County, Texas, on July 20, 1910, and that he was discharged from this hospital on January 1, 1911, as Restored.

(signed)  L. Barbato, M. D.
Superintendent,
San Antonio State
Hospital."

No predicate had been laid for the introduction of this statement, as required by Article 3720, Vernon's Texas Civil Statutes, by virtue of which it was tendered, in that it was not a copy of any record, or filed-paper of any public officer, or of any custodian of records, or of the minutes of any official Board, or of any court of this state, certified to officially; on the contrary, it was merely a voluntary and ex parte individual statement by one signing himself as "superintendent, San Antonio State Hospital", to the effect that the deceased Lewis had been discharged from that hospital on January 1 of 1911, as "Restored".

On the face of Article 3720, it is clear that this tender in nowise complied therewith.

Further discussion is deemed unnecessary, since these conclusions determine the merits of the appeal; the judgment will accordingly be affirmed.

Affirmed.