

# THE ATTORNEY GENERAL
# OF TEXAS

## AUSTIN 11, TEXAS

GROVER SELLERS
~~WILLIAMSON~~XXXXX
ATTORNEY GENERAL

Hon. Thos. J. Hightower
District Attorney
75th Judicial District
Liberty, Texas

Dear Sir:

Opinion No. O-7194
Re: Whether or not a person who has
been adjudged a non compos mentis
and who cannot read and write the
English language be entitled to
have his name placed on the Demo-
cratic ticket for the office of
Sheriff of Liberty County, Texas

Your request for an opinion from this department on
the above subject matter is as follows:

"Would the fact that a person who has been adjudged
a non compos mentis and who has not gone through the pro-
per procedure to have this conviction set aside and one
who cannot read and write the English language be a bar
to having his name placed upon the Democrat ticket for
a County Office?"

You also stated in answer to our letter for additional
information that the person referred to in your request was
seeking the office of sheriff of Liberty County, Texas.

We know of no provision in the Constitution or stat-
utes of this State requiring a candidate for the office of
sheriff to be able to read and write the English language.

With reference to your question concerning the eligi-
bility of a person who has been adjudged insane to have his
name placed upon the Democratic ticket, we call your attention
to the following provisions:

Art. 6866, V.A.C.S., provides:

"Every perosn elected to the office of sheriff shall,
before entering upon the duties of his office, give a
bond with two or more good and sufficient sureties, to
be approved by the Commissioners' Court of his county,
for such sum as may be directed by such court, not less

than Five Thousand ($5,000.00) Dollars nor more than Thirty Thousand ($30,000.00) Dollars payable to the Governor and his successors in office, conditioned that he will account for any pay over to the persons authorized by Law to receive the same, all fines, forefeitures and penalties that he may collect for the use of the State or any county, and that he will well and truely execute and make due return of all process and precepts to him lawfully directed, and pay over all sums of money collected by him by virtue of any such process or precept, to the persons to whom the same are due, or their lawful attorney, and that he will faithfully perform all such duties as may be required of him by law, and further conditioned that he will pay over to his county all moneys illegally paid to him out of county funds, as voluntary payments or otherwise, and said sheriff shall also take and subscribe the official oath, which shall be indorsed on said bond, together with the certificate of the officer administering the same. When any person elected or appointed sheriff, in accordance with this Article, shall have given bond and taken his official oath, he may enter at once upon the discharge of his duties, and his acts shall be as valid in Law before receiving his commission as afterwards; said bond shall not be void on the first recovery, but may be sued on from time to time in the name of any person injured until the whole amount thereof is recovered; provided, however, that no sheriff or his duly and legally appointed deputies shall be responsible on their official bond or personally by reason of having received from or confined any prisoner delivered or surrendered to them by any State Ranger."

Articel 6867, V.A.C.S., states that:

"When any person elected sheriff shall neglect, refuse or fail from any cause whatever to give bond and take the official oath within twenty days after notice of his election, the office shall be deemed vacant."

It will be noted that by virtue of the foregoing statutes a candidate for the office of sheriff, if elected to that office, must take the official oath and give bond within twenty days after notice of his election.

Article 25, V.A.C.S., provides:

"All oaths and affirmations shall be administered in the mode most binding upon the conscience of the individual taking same and shall be subject to the plains and penalties of perjury."

Article 305, V.A.P.C., provides:

". . . .Oaths of office, or any other promissory oaths, are not included in the definition of perjury, except that part of the official oath which relates to dueling."

We quote the following from 39 Amer. Jur. pp. 494 and 495:

"In its broadest sense, an oath is any form of attestation by which a person signifies that he is bound in conscience to perform an act faithfully and truthfully. It involves the idea of calling on God to witness what is averred as truth, and it is supposed to be accompanied with an invocation of His vengeance, or a renunciation of His favor, in the event of falsehood. The word 'oath' has been construed in include 'affirmation' in cases where, by law, an affirmation may be substituted for an oath."

"The administering of an oath in legal form is regarded not only as the highest test of truth, but as an instrument appropriated by the law for its ascertainment in judicial investigations. It purpose is to purge the conscience and impress the witness with a due sense of religious obligation, so as to secure the purity and truth of his testimony under the influence of its sanctity."

In Vaughn v. State, 177 S.W. (2d) 59, the Court of Criminal Appeals in distinguishing the difference between an "affidavit" and "oath" used the following language:

"An oath is any form of attestation by which a person signifies that he is bound in conscience to perform an act faithfully and truthfully. The difference between an affidavit and an oath is that an affidavit consists of a statement of fact, which is sworn to as the truth, while an oath is a pledge. 39 Am. Jur. 494."

It is apparent from the foregoing authorities that it is the purpose of an official oath to bind the conscience of the person taking the oath to perform an act faithfully and truthfully. We think it is elementary that this purpose could not be accomplished by an insane person taking an oath. Therefore, it is our opinion that an insane person cannot take the official oath as prescribed by Article 6867, supra.

"A bond is an obligatory instrument in writing whereby one binds himself to another to pay a sum of money or do some

other act.  It is what binds; therefore an instrument in writing that legally binds a person to do a certain thing may be called a bond.  In this sense, the term implies nothing more than a contract."  7 Tex. Jur. 57 and 58.

"Bonds are construed in accordance with the rules governing the construction of written contracts."  7 Tex. Jur. 82.

Since a bond is construed in accordance with the rules governing written contracts and is in fact a special type of contract, we call your attention to the following quotation from 24 Tex. Jur. pp. 380-382:

"As a general rule the contracts of a person of unsound mind, like those of an infant, are voidable, but not absolutely void.  They may not be impeached collaterally, and they are subject to ratification.

"A different rule obtains, however, with respect to the contracts of a person who has been placed under guardianship, pursuant to a valid judgment of insanity. 'Such a person, whilst under legal and subsisting guardianship, and in support of his guardian's authority, is conclusively presumed incompetent to contract, and his deed, as against his guardian is absolutely void.'  There is reason to believe that, even in the absence of guardianship, a person who has been adjudged insane should be considered utterly incapable of making a binding contract."  (Underscoring ours)

Article 5998, V.A.C.S., provides:

"The official bond of each officer shall be executed by him with two or more good and sufficient sureties ora solvent surety company authorized to do business in this State."  (Underscoring ours)

We believe it is obvious from the foregoing that an insane person does not have the mental capacity to be a party to a bond contract as required by Art. 5998 and, therefore, could not execute a valid bond.

It necessarily follows from what we have already said that an insane person is ineligible to hold the office of sheriff since he cannot take the official oath and give bond as required by Articles 6866 and 6867, supra.

In 24 Tex. Jur. pp. 415 and 416, we find the following:

"    . . . . .the law indulges a disputable presumption
of sanity, and casts on the party who alleges insanity
the burden of proving his contention.  On the other hand,
proof of the existance of insanity at a particular time
raises a rebuttable presumption of the continuance there-
of, and places on the party who asserts a restoration of
reason the burden of proving that sanity had been in fact
restored.  Stated in the language of authority:

    "'Three rules seem to be fairly well stated in
this connection:  It is the presumption of law that
all men are sane, and the burden to prove insanity
is on the party alleging.  This is the first rule.
The second is:  Insanity admitted or once proved to
exist is presumed to continue.  Third.  If a recovery
or a lucid interval is alleged to have occurred, the
burden to prove such allegation is on the party mak-
ing it.'"  (Morse v. State, 68 Crim. App. 351, 152
S.W. 927.)

    We note the following discussion of the effect of a
judgment of insanity in the case of Williams v. Sinclair -
Prairie Oil Company (Dism., Judgm, Cor.), 135 S.W. (2d) 211:

    "It is further contended that since the judgment in
cause No. 7870 recites that the court found that John R.
Williams was sane at the time he executed the instrument
sought to be cancelled, that such finding raised a legal
presumption of sanity at all subsequent dates, therefore
it must be presumed that John R. Williams was sane at the
time of the trial.  Counter to this contention plaintiff
contends that the judgment of the county court of Gregg
County rendered in 1909 adjudging John R. Williams insane
legally established the status of John R. Williams as that
of an insane person and that proper verity given to that
judgment conclusively affirms the issue of his insanity
at all sebsequent times until he has been restored to
sanity by judgment of the county court in a proceeding
instituted for that purpose as authorized by the restor-
ation statute.  Prior to the enactment of the restoration
statute it was held that such a judgment of insanity, as
against strangers thereto, created a rebuttable presump-
tion of insanity; that is, 'prima facie evidence of the
mental unsoundness adjudged to exist.'  Herndon v. Vick,
18 Tex. Civ. App. 583, 45 S.W. 852.  We do not think
that the enactment of the restoration statute changed
the effect of a judgment of insanity from a rebuttable
presumption to a conclusive presumption.  It is our
opinion that the restoration statute merely provided a
remedy for permanently removing the existing rebuttable

presumption of insanity. <u>Therefore we think that the judgment of the county court of Gregg County adjudging John R. Williams insane has the legal effect of constituting a continuous rebuttable presumption of insanity, effective at any time the issue is raised and continues to have that force and effect until his status of sanity is adjudged to be restored by a judgment of the county court in a proceeding authorized for that purpose by the restoration statute.</u> Hence the finding of the court that John R. Williams was sane at the time he executed the conveyance does not have the legal effect of a judgment of the county court restoring his status of sanity, so as to raise the presumption of sanity at the time the judgment was rendered in cause No. 7870." (Underscoring ours)

In Bogel v. White, 168 S.W. (2d) 309 (writ refused) the Court of Civil Appeals affirmed the judgment of the trial court in refusing to admit a will to probate on the ground that the deceased was insane and did not possess testamentary capacity to execute a valid and legal will. We quote the following language from said case.

"This court, however, fails to see how the 1915 retrial of the deceased, however invalid it may have later turned out to have been, could have obliterated the still-subsisting judgment of insanity generally against him, of April 20 of 1910, which had never been contested, appealed from, nor otherwise removed; in fact, since that was a general conviction for insanity, attended by the appointment of a guardian of the lunatic's estate, rendered by a court of competent jurisdiction with full power in the premises, as this court reads the authorities, <u>the insanity therein so determined to exist was presumed by law to continue until the unfortunate victim's status as to sanity was changed by a subsequent judgment of a county court, in a proceeding authorized for that purpose by the 'restoration statute.</u> Vernon's Ann. Civ. St. art. 5561a, § 4; 68 C.J., p. 452, Sec. 52; p. 453, Sec. 53, and p. 454, Sec. 54; Williams v. Sinclair-Prairie Oil Co., Tex. Div. App., 135 S.W. 2d 211; Vance v. Upson, 66 Tex. 476, 1 S.W. 179; 17 Tex. Jur. p. 582, Sec. 242; Navorro v. Garcia, Tex. Civ. App., 172 S.W. 723; 68 C.J., page 478, Sec. 86." (Underscoring ours)

Article 2927, V.A.C.S., reads as follows:

"No person shall be eligible to any State, county, precinct or municipal office in this State unless he shall be eligible to hold office under the Constitution of this State, and unless he shall have resided in this State for

the period of twelve months and six months in the county, precinct, or municipality, in which he offers himself as a candidate, next preceding any general or special election, and shall have been an actual bona fide citizen of said county, precinct, or municipality for more than six months. No person ineligible to hold office shall ever have his name placed upon the ballot at any general or special election, or at any primary election where candidates are selected under primary election laws of this State; and no such ineligible candidate shall ever be voted upon, nor have votes counted for him, at any such general, special, or primary election." (Underscoring ours)

Article 2928, V.A.C.S., provides:

"Neither the Secretary of State, nor any county judge of this State, nor any other authority authorized to issue certificates, shall issue any certificates of election or appointment to any person elected or appointed to any office in this State, who is not eligible to hold such office under the Constitution of this State and under the above article; and the name of no ineligible person, under the Constitution and laws of this State, shall be certified by any party, committee, or any authority authorized to have the names of candidates placed upon the primary ballots at any primary election in this State; and the name of no ineligible candidate under the Constitution and laws of this State shall be placed upon the ballot of any general or special election by any authority whose duty it is to place names of candidates upon official ballots." (Underscoring ours.)

In view of the foregoing, it is the opinion of this department that so long as the presumption of insanity has not been overcome in a proper proceeding, a person who has been adjudged insane would not be entitled to have his name placed upon the Democratic ticket as a candidate for sheriff.

We trust that we have satisfactorily answered your request.

Yours very truly

ATTORNEY GENERAL OF TEXAS


By s/J. A. Ellis
    J. A. Ellis
    Assistant

By s/John Reeves
    John Reeves

JR:djm:wc


APPROVED APRIL 30, 1946
s/Carlos C. Ashley
FIRST ASSISTANT
ATTORNEY GENERAL

Approved Opinion Committee By s/BWB Chairman

This Opinion Considered And Approved In Limited Conference