**ELLIOTT et al. v. ELLIOTT et al.**

No. 14900.

Court of Civil Appeals of Texas.
Fort Worth.

Jan. 30, 1948.

Rehearing Denied Feb. 27, 1948.

W. L. Coley, of Fort Worth, and Eades & Eades, of Dallas, for appellants.

Samuels, Brown, Herman & Scott, of Fort Worth, and Seaberry & Hagman, of Weatherford, for appellees.

McDONALD, Chief Justice.

The principal parties to this suit are the four children of C. E. Elliott and his wife, Mrs. M. E. Elliott, both of whom are now deceased. C. E. Elliott, a son, and Vera Spencer, a daughter, are plaintiffs, and J. King Elliott, a son, his wife, Phena Anderson Elliott, and Uretta Small, a daughter, are defendants. The two daughters are joined by their husbands in the suit.

C. E. Elliott died in 1910. It seems to be undisputed that he died intestate, and that there was no administration on his estate and no necessity for such. Mrs. M. E. Elliott died on July 10, 1945. Plaintiffs' petition alleges that there has been no administration on her estate, and that there is no necessity for such. It also alleges, in substance, that Mrs. Elliott left "innumerable wills," but that she was mentally incompetent when she signed them.

The suit is brought for the purpose of partitioning the real property belonging to the estates of the parents, and to cancel certain deeds which Mrs. Elliott had executed in her lifetime and which purported to convey various parcels of said real estate to the several defendants. Recovery is also sought from J. King Elliott for certain rents and revenues alleged to have been collected from the property of the estates within the two year period next preceding the filing of the suit.

The verdict of the jury is to the effect that Mrs. Elliott was mentally incompetent at the various times she executed the deeds sought to be set aside; that the execution of said deeds was obtained through undue influence; and that J. King Elliott collected the sum of $2,470 in rents and revenues from said property during the two year period mentioned.

Defendants have appealed. The nature of the case, the pleadings and the proof will be more fully discussed in connection with the various points of error presented by appellants. But it may be said here that one of the disputed issues was whether the property was the community property of the parents or the separate property of the mother, and another issue was whether, if it was community property, Mrs. Elliott had acquired title by limitation to Mr. Elliott's community interest after his death.

The contention made by appellants under their first point of error is that the probate court had exclusive jurisdiction of the issues involved in the suit, and that the district court erred in assuming jurisdiction thereof. The contention is based in part upon the claim that the proof fails to show that there was no necessity for an administration on the estate of Mrs. Elliott, and in part on the claim that it is shown both by plaintiffs' pleadings and by the proof that Mrs. Elliott left a will.

The general rule, announced in many decisions, is well stated in the oft-cited case of Buchner v. Wait, Tex.Civ. App., 137 S.W. 383, 388, writ refused, as follows:

"The jurisdiction of the district court to partition estates and in such suit require an accounting and adjust the equities between the owners in common of the estate is unquestioned, but this jurisdiction cannot be exercised in such way as to defeat the constitutional jurisdiction of the county court to probate wills and grant letters testamentary to executors and to administer estates in accordance with the terms of a legal and valid will. * * *

"When invoked in a proper manner, this jurisdiction of the county court becomes exclusive, and, unless facts exist which would make its exercise unauthorized un-

der the statute, no other court can assume jurisdiction to make the settlement, partition, and distribution of estates of deceased persons until the time in which such proceeding could be brought in the county court has expired, or, if an administration has been begun in the county court, until the administration is closed."

 It is held in the same case, and in other cases which could be cited, that the absence of debts or the lack of necessity for an administration does not affect the power of the probate court to probate a will. The necessity for an administration need be shown only when there is no will.

 Jurisdiction to entertain a suit by the heirs to recover property belonging to an estate, within the four year administration period, may properly be exercised by the district court only on pleading and proof that there is no will, no administration, and no necessity for such. Zamora v. Gonzalez, Tex.Civ.App., 128 S.W.2d 166, writ refused. The same rule applies to a suit by the heirs to cancel a deed executed by the ancestor. Williams v. Williams, Tex.Civ.App., 108 S.W.2d 297.

 While it is sometimes said, as in O'Neil v. Norton, Tex.Com.App., 29 S.W. 2d 1060, that the district court has no jurisdiction to decree a partition of the estate among the heirs until the administration in the probate court has been finally concluded, it is perhaps more accurate to say, as stated in Buchner v. Wait, supra, that the jurisdiction of the district court cannot be exercised in such way as to defeat the constitutional jurisdiction of the probate court, and that, when invoked in a proper manner, the jurisdiction of the probate court becomes exclusive. Such a conflict of jurisdiction falls within the general rules recognized in Cleveland v. Ward, 116 Tex. 1, 285 S.W. 1063, 1071, where it is said: " 'It is a familiar principle that, when a court of competent jurisdiction has become possessed of a case, its authority continues, subject only to the appellate authority, until the matter is finally and completely disposed of; and no court of co-ordinate authority is at liberty to interfere with its action. The principle is essential to the proper and orderly administration of the laws;

and while its observance might be required on the grounds of judicial comity and courtesy, it does not rest upon such considerations exclusively, but is enforced to prevent unseemly, expensive, and dangerous conflicts of jurisdiction and of process. If interference may come from one side, it may from the other also, and what is begun may be reciprocated indefinitely."

The rule goes further in cases relating to estates of decedents, in that the superior right of the probate court does not depend on priority in point of time of filing the proceeding. The courts are careful to protect the jurisdiction of the probate court. Plaintiffs are required to negative the probability of conflicting jurisdiction by alleging and proving, in a suit brought in the district court to partition the property of the estate, or to set aside deeds executed by the deceased and recover the property, that there is no will, no administration and no necessity for administration, and it was held, under the former practice, that a petition which failed to contain such allegations was subject to a general demurrer. Youngs v. Youngs, Tex.Com.App., 26 S.W. 2d 191. In Cowart v. Miner, Tex.Com. App., 29 S.W.2d 1007, the Commission of Appeals held that the district court did not have jurisdiction of the suit where the proof showed that there were debts which required an administration in the probate court, even though no complaint was made by the parties themselves concerning the jurisdiction of the district court.

In most cases the practical result would be the same, whether it be said that the district court has no jurisdiction, or whether it be said that the district court errs in assuming jurisdiction. But there is a vital difference between lack of jurisdiction and improper exercise of jurisdiction. For instance, if a divorce suit should be filed in the county court, there would be no jurisdiction, and a judgment rendered therein, other than one of dismissal, would be void. However, if a divorce suit should be filed in a district court, and if one of the parties should later file petition for divorce in another district court, the latter court, upon proper plea and proof of the filing of the former suit, would decline to assume or continue to exercise jurisdiction.

▮ Appellants insist that there was no proof negativing the necessity for administration, in that the proof did not affirmatively show that there were no debts. This contention is made for the first time in appellants' brief filed in this court. There was no such contention made in their motion for new trial, and we think that complaint of failure to prove that there were no debts comes too late when it is made for the first time in this court. If the proof affirmatively showed that there was an administration pending, or that there was need of an administration, then we might, for the reasons set out in the quoted excerpt from Cleveland v. Ward, supra, declare that the present suit should be dismissed or abated until an administration could be had in the probate court. We are not willing, however, to do so under the circumstances presented by this record.

▮▮ As has been said, plaintiffs alleged that Mrs. Elliott executed some wills, but that all of them were executed when she was mentally incompetent. On the trial, plaintiffs introduced in evidence a purported will dated November 16, 1939. The will was typewritten, and was signed by only one witness. We think, therefore, that we can safely treat this so-called will as a nullity for the purposes of this opinion. They also introduced in evidence a purported will dated November 29, 1939. The second will bears the signatures of two attesting witnesses, both of whom were called to the stand by defendants, and they testified that Mrs. Elliott signed the will before them and requested that they sign as witnesses, and that she appeared to them to be normal in every respect when she signed the will. Defendants introduced another purported will dated March 18, 1940. The same names appear as attesting witnesses on this document as appeared on the will dated November 29, 1939, but the witnesses were not asked, and they did not say, whether or not they also signed the will of March 18, 1940. Despite the fact that these wills were introduced in evidence, defendants did nothing to indicate that they regarded either of the documents as Mrs. Elliott's last will and testament. They did nothing to indicate that they desired to assert any claim of title under either of them if either of them should be probated. They made no request for abatement or postponement of the suit to allow them opportunity to offer one of the wills for probate. After the jury verdict was returned, defendants moved for judgment non obstante veredicto, and attached to their motion a proposed draft of a decree, according to the terms of which judgment would have been rendered in favor of defendants on the merits of the case for the respective properties claimed by them. In view of the foregoing, was the trial court obligated to discontinue the trial in order that one or the other of the supposed wills might be offered for probate? We do not believe that he was. The wills introduced in evidence named as beneficiaries only the four children who were parties to the district court suit. The defendants would not have received as much of the estate under either of the wills as they would have received under the deeds which Mrs. Elliott executed during her lifetime, which were under attack in this suit. The trial court may well have concluded that defendants did not elect to claim under either of such wills, and did not propose to offer either of them for probate. The parties to the suit were the only persons shown to have had any interest in the property, whether the wills should be probated or not. The court did not have before it a situation where there was reason to fear that rights of persons not parties to the district court suit might be prejudiced if the suit should proceed to judgment.

Walker v. Abercrombie, 61 Tex. 69, demonstrates that the district court is not totally lacking in jurisdiction, even when the proof shows a necessity for administration, and that the real inquiry, in a given case, is as to the propriety of assumption or exercise of jurisdiction by the district court.

In Lauraine v. Ashe, 109 Tex. 69, 191 S. W. 563, 196 S.W. 501, it is recognized that in some instances it is proper for the district court to exercise jurisdiction where the jurisdiction of the probate court is inadequate to adjust all the rights and equities of the parties. See also Cyphers v. Birdwell, Tex.Civ.App., 32 S.W.2d 937, writ refused. In the case before us, there

were questions to be decided which were beyond the jurisdiction of the probate court. In no event would the district court have been required to dismiss the suit entirely, but he would have been bound, had a question of conflict of jurisdiction been properly invoked, to have made such orders, and to have taken such steps, as would have resulted in a full recognition of the constitutional jurisdiction of the probate court and at the same time would have afforded the parties a reasonable opportunity to try in the district court such issues as could not have been settled in the probate court.

It was in their motion for new trial that the defendants, for the first time, suggested that the trial court was without jurisdiction because Mrs. Elliott had left a will. The district court was not in any event entirely lacking in jurisdiction, as we have said, because there were issues before it which were beyond the jurisdiction of the county court to decide. The pleadings of the parties, both plaintiffs and defendants, presented a case within the jurisdiction of the district court. Defendants were called on to defend their title in a court having at least potential jurisdiction of the case. Under the entire record in this case, we think that the trial court was justified in overruling the contention, when made for the first time on motion for new trial, that it was without jurisdiction to try the case. There might be a case where defendants, in a situation similar to the one before us, could properly request the trial court after judgment had been rendered, to set the judgment aside in order that they might have a reasonable opportunity to probate the will of the deceased, and thus be in position to claim the property under the will, but we are unwilling to say that the trial court committed reversible error in not setting the judgment aside and dismissing the case which is before us.

It seems to us that our views are in harmony with those expressed in McWhorter v. Gray, Tex.Civ.App., 4 S.W.2d 302, 304. In that case the beneficiaries under a will agreed that they would not offer it for probate, and that they would partition the property of the estate in a friendly partition suit in the district court. The petition filed in that suit alleged the facts concerning the will, the agreement not to probate it, etc. Some of the parties became dissatisfied with the manner in which the estate was being divided, and filed a motion asking that the order of partition be set aside and that the suit be dismissed. In said motion they referred to the will, and alleged that an administration was necessary. The trial court ultimately denied this motion, and the dissatisfied parties filed application in the county court to probate the will. Other parties to the district court suit then sought an injunction to restrain the proponents of the will from proceeding further in the probate of the will. The injunction was issued, and the action of the district court was affirmed on appeal. The following is taken from the opinion, and is in some respects applicable to the conduct of the defendants in the case before us: "Having submitted the matter of partition to the district court, all of the heirs were bound by its judgment, subject to such corrections as might be made on appeal. The will, not having been probated, furnished no evidence of title, and its provisions could not control the division of the property in that court. The appellants, with the other heirs, made their election as to how they would take the property when they filed their partition suit in the district court, and they cannot now establish an inconsistent claim as devisees under the will which would lead to different results. Having elected one remedy, they are estopped to now pursue another which is inconsistent with the one first adopted."

On December 2, 1941, J. King Elliott filed an application in the county court of Tarrant County alleging that Mrs. Elliott was non compos mentis and that there was an immediate necessity for appointment of a guardian of her person and estate. The county court heard said application and appointed the applicant as the guardian of her person and estate. The applicant filed the required oath and guardian's bond. So far as the record shows, the guardianship was not terminated prior to Mrs. Elliott's death. On August 30, 1943, there was filed in the county court the affidavit of H. S. Lattimore, in which it was declared that Mrs. Elliott was a lunatic or non compos mentis and that the welfare of Mrs. Elliott

and others required that she be placed under restraint. Said complaint was heard before a jury on November 17, 1943, and in response to a finding of the jury that Mrs. Elliott was not a person of unsound mind, it was adjudged on said date that Mrs. Elliott was not a lunatic, and it was ordered that she be released from the Sheriff of Tarrant County or any other person, and the costs of the proceeding were adjudged against Tarrant County.

Some of the deeds sought to be set aside in the present suit were executed by Mrs. Elliott on November 17, 1943, after the judgment just mentioned was entered.

In the present suit Special Issue No. Five inquired whether Mrs. Elliott was mentally incompetent at the time she executed the deeds on November 17, 1943. The jury found that she was mentally incompetent at such time. Appellants' second point of error reads as follows: "The error of the Court in submitting Special Issue No. 5 to the jury and in rendering judgment on the answer of the jury to such issue since no witness testified that Mrs. M. E. Elliott was of unsound mind between the time she was adjudged to be of sound mind and the time she executed the deeds in question."

■■■ Appellants' contention is that the judgment of the county court entered on November 17, 1943, declaring that Mrs. Elliott was not a lunatic, is conclusive as to her mental condition at the time the judgment was rendered; that she executed the deeds later that day; and that there is no evidence to show that she became mentally incompetent in the brief interval between the time the judgment was rendered on the lunacy complaint and the time the deeds were executed. Appellants rely on the cases of Mitchell v. Inman, Tex.Civ. App., 156 S.W. 290, writ refused; Starnes v. Campbell, Tex.Civ.App., 119 S.W.2d 116, writ dismissed; and Tipton v. Tipton, Tex.Civ.App., 140 S.W.2d 865, writ dismissed, correct judgment. The cases cited are to be distinguished from the present one in this: In each of the cited cases the individual in question had theretofore been adjudged to be insane, and later there had been a judgment of restoration of san-

ity in a proceeding brought for that purpose. A proceeding for restoration of sanity might, in Mrs. Elliott's case, have been brought either under Articles 4282–4284, as amended, Vernon's Tex.Civ.St., or perhaps under Article 5561a, Vern.Tex.Civ. St. The implication of the holdings in Williams v. Sinclair-Prairie Oil Co., Tex.Civ. App., 135 S.W.2d 211, writ dismissed, correct judgment; Bogel v. White, Tex.Civ. App., 168 S.W.2d 309, writ refused for want of merit; Bolton v. Stewart, Tex. Civ.App., 191 S.W.2d 798; and Joy v. Ivy, Tex.Civ.App., 194 S.W.2d 411, is that an adjudication of insanity by the county court raises a continuous rebuttable presumption of insanity, and that only a judgment of restoration of sanity, entered in a proceeding brought for that purpose, will be sufficient to conclusively remove such rebuttable presumption. The facts of the present case illustrate the wisdom of such a rule. Had the second proceeding been one brought under the statutes for judgment of restoration of sanity, the court and jury would have had before them a case where it was known that Mrs. Elliott had theretofore been adjudged to be a person of unsound mind, and there would have been a rebuttable presumption that she was still of unsound mind, and it requires no argument to demonstrate that the entire nature of the judicial inquiry would likely have been on a different basis than it would have been where a proceeding was brought, not for the primary purpose of having a guardian appointed, but for the more drastic purpose of having her confined, in which latter proceeding the presumption would have been that she was sane until proved otherwise. Although the evidence concerning her mental condition on November 17, 1943, is conflicting, there is ample evidence to support the finding of the jury in the present suit. In fact, there is no claim that the evidence does not support the finding, except in the limited respect set out in the point of error.

■■■ Appellants contend that there was no evidence to authorize the submission of issues on undue influence. We shall not extend this opinion by discussing the evidence in detail. Mrs. Elliott was more than eighty years of age when the various

deeds were signed. We have already mentioned her mental condition. We have carefully considered the transcript of the testimony, and have again reviewed the decisions cited in the brief. We had occasion in a fairly recent case to review the authorities relating to questions of undue influence, and have compared the facts of the present case with the facts of that case. Firestone v. Sims, Tex.Civ.App., 174 S.W. 2d 279, writ refused. We hold that the findings as to undue influence have support in the evidence.

■ Some of the deeds sought to be set aside were executed in 1939, and another was executed in 1944, and the jury found that Mrs. Elliott was mentally incompetent at such times. The evidence is entirely sufficient to support the verdict in this respect.

■ The court found that the property was incapable of partition in kind, and ordered that it be sold. Complaint is made of this finding and order. No issues concerning this question were submitted to the jury and none requested. There was evidence concerning the kind and nature of the property, and we find no reversible error as to this matter.

■ Defendants claimed in the trial court, and claim here, that the property in question was the separate property of Mrs. Elliott, and alternatively, if it was community property, that Mrs. Elliott acquired good title to Mr. Elliott's by limitation. Several questions are raised in the brief concerning this phase of the case. In view of what we hold on other questions in the case, our disposition of this appeal would be the same whether we should sustain or overrule defendants' contentions concerning the matters just mentioned. If we uphold the cancellation of the deeds executed by Mrs. Elliott, then the respective interests of the four children are the same, whether they inherited partly from their father and partly from their mother, or whether they inherited exclusively from their mother. Consequently we do not feel called on to discuss further the eighth, tenth, and eleventh points of error, and the ninth point in so far as it relates to the question whether Mrs. Elliott acquired title by limitation to Mr. Elliott's interest in the community estate. We have given consideration to these points of error, and believe that they are without merit.

■ Defendants contend that plaintiffs' suit is barred by limitation. Since no issues touching upon limitation were submitted to the jury, and none were requested, the defense of limitation is waived, unless it is established as a matter of law by the undisputed evidence.

For the reasons above set out, we shall not further discuss the question whether Mrs. Elliott acquired title by limitation to the interest inherited by the children from their father.

The defense of limitation is not available as to the attack made on the deeds executed in 1943 and 1944, because the suit was brought within the limitation period following those respective dates.

■ Three deeds were executed in 1939. The four year statute, Vernon's Ann.Civ.St. art. 5520, is not available as a defense to the suit brought to set them aside, because Mrs. Elliott was laboring under the disability of insanity when she signed them, and continued under that disability until her death. The four year period had not expired following the date of her death.

■ The three year statute, Vernon's Ann.Civ.St. art. 5507, is not available for at least two reasons. First, in order to claim under the three year statute, it must be shown that the deeds were free from fraud, that is to say, that they conveyed both the legal and the equitable title. Second, adverse possession is not shown as a matter of law.

■ The five year statute, Vernon's Ann.Civ.St. art. 5509, is not available for at least two reasons. First, adverse possession is not shown as a matter of law. Second, the deeds to the Tarrant County land reserved a life estate in the grantor. We cannot see how defendants could claim that they went into possession, prior to the grantor's death, under deeds which conveyed to them only a remainder interest, and which reserved the possessory right to the land in the grantor. The possession of

defendants, if they held possession before Mrs. Elliott's death, could not have been under the deeds, but was in direct contradiction with the terms of the deeds. There was nothing in said deeds to give notice to plaintiffs that defendants were holding the land adversely to plaintiffs prior to the time of her death. The deed to the Wheeler County land did not reserve a life estate, but the evidence does not show adverse possession of that land as a matter of law.

Under the twelfth point of error it is contended that the proof is insufficient to show that J. King Elliott collected $2,470 in rents and revenue from the property after March 2, 1944. The evidence in this respect is rather meager, but we believe that it is sufficient to support the verdict.

The thirteenth and last point of error asserts that defendants should have had judgment notwithstanding the verdict. The motion therefor was based on the theory that the suit was barred by limitation and laches. We overrule the point without further discussion.

All points of error are overruled and the judgment of the trial court is affirmed.