**Quenton D. MARTIN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 47607.**

Court of Criminal Appeals of Texas.

Dec. 12, 1973.

Rehearing Denied Feb. 6, 1974.

Holt & Tatum, Paul Tatum, Nacogdoches, for appellant.

Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

Appeal is taken from an order revoking probation.

On October 5, 1970, appellant pleaded guilty before the court to the offense of driving a motor vehicle upon a public highway while intoxicated, second offense. Punishment was assessed at five years, but the imposition of sentence was suspended and appellant was granted probation.

A motion to revoke appellant's probation was filed on March 31, 1972, and the same was revoked and sentence pronounced on April 26, 1972.

Appellant's single contention is that the court abused its discretion in revoking probation in that evidence reflected that appellant was not competent to stand trial and due process required the court to halt the proceeding and conduct a hearing on the competency of appellant to stand trial.

Appellant relies primarily upon his October 29, 1964, commitment to Rusk State Hospital for an indefinite period, which recites that he was "mentally incompetent," all matters of fact and law having been submitted to the court. The docket sheet of the court below, in the record before us, reflects that a continuance in the primary cause was granted on May 11, 1970, because appellant was at that time in Rusk State Hospital. We also observe that the record reflects appellant was committed to Rusk State Hospital on August 24, 1964, on a writ of commitment for temporary hospitalization as a mentally ill person, for observation or treatment not to exceed 90 days.

All of these factors relied upon by appellant to support his assertion that the court below should have halted the April 26, 1972, revocation proceedings and conducted a competency hearing pre-date the original trial of appellant on October 5, 1970. Furthermore, the court certainly

knew appellant was at Rusk when it granted the May 11, 1970, continuance in this cause. Nevertheless, the court accepted appellant's plea of guilty on October 5, the judgment reciting "it appearing to the Court that the Defendant is sane." See and compare Holder v. State, Tex.Cr.App., 406 S.W.2d 436. That judgment carries a presumption of regularity and of conformity with the requirements of Article 26.13, Vernon's Ann.C.C.P. There was no appeal from the conviction and the record before this court does not reflect what inquiry was conducted before appellant's guilty plea was accepted.[1] That the question of competency was resolved against incompetency at the prior proceedings wherein appellant's plea was accepted is the only conclusion which may be reached on the record before us. Such finding would of necessity remove any pre-existing presumption arising from appellant's commitments in 1964. The question before the trial court was appellant's competence to consult with counsel and understand the proceedings at that time, and once decided in favor of competency, any earlier presumptions to the contrary vanish forever.[2]

■ In the instant case this argument is even more compelling, because the guilty plea was accepted by the same judge sitting in the same court as later heard the motion to revoke probation now before us on appeal. Consequently, he could take judicial notice of his prior determination made be-

fore accepting appellant's guilty plea. In such a case as this one, the presumption which would normally arise from a prior judicial determination of mental incompetence simply is no longer of force.

Finding no abuse of discretion by the court below, the revocation of probation is affirmed.

ROBERTS, Judge (dissenting).

I dissent to the affirmance of this case.

In Ainsworth v. State, Tex.Cr.App., 493 S.W.2d 517, this Court noted that the fact that a person had previously been determined to be "mentally ill" was not tantamount to a finding of "mental incompetency,"[1] but the finding of mental illness "standing alone" could be sufficient to raise the issue of present incompetency so as to require the trial judge to halt the proceedings and empanel a jury to determine the issue.[2]

Patently, a judicial determination of mental incompetency presents a far stronger case for halting the proceedings and empaneling a jury to determine the issue of incompetency to stand trial.

The record does not reflect that appellant was ever discharged from the Rusk State Hospital or that his mental competency has been redetermined by a court in accordance with Article 5547–83(a), Vernon's Ann.Civ.St.[3] While the judicial de-

---

1. Furthermore, the adequacy of such inquiry is not before us for review, this being an appeal from the revocation of probation and not from the October 5, 1970, conviction. At this date appellant's recourse, if any, must be by writ of habeas corpus.

2. The record contains nothing originating during the period between acceptance of appellant's guilty plea on October 5, 1970, and the revocation hearing on April 26, 1972, which would raise a question concerning his competence to consult with counsel and understand the proceedings at the revocation hearing.

1. Article 5547–83(b), V.A.C.S., provides:
   "The judicial determination that a person is mentally ill or the admission or commit-

ment of a person to a mental hospital, without a finding that he is mentally incompetent, does not constitute a determination or adjudication of the mental competency of the person and does not abridge his rights as a citizen or affect his property rights or legal capacity."

2. In Ainsworth v. State, supra, this Court noted there were factors which tended to negate appellant's incompetency to stand trial and concluded that the record supported the trial court's determination that the issue of present incompetence did not exist.

3. Article 5547–83(a), V.A.C.S., provides:
   "The judicial determination under this Code that a person is mentally incompetent creates a presumption that the person con-

termination that appellant was mentally incompetent was on October 29, 1964, the docket sheet in the instant case reflects that appellant's first motion for continuance in the primary offense was granted on May 11, 1970, for the reason that appellant was in Rusk State Hospital. The proceedings in the primary offense and the revocation hearing were both in the 2nd Judicial District Court. Both were before the same judge.

The only other evidence presented at the hearing on appellant's motion was a temporary commitment (and supporting papers in the cause) to Rusk State Hospital on August 24, 1964, based upon a finding that appellant was mentally ill, which was introduced into evidence by the State.

To summarize, the trial court was confronted with the following factors which raised the issue of the appellant's incompetency to stand trial:

(1) Appellant's motion to dismiss, while not a request to hear evidence on the issue of competency to stand trial as provided for in Article 46.02, V.A.C.C.P., did recite that appellant was under indefinite commitment to Rusk State Hospital and that his competency had never been restored.

(2) A commitment, dated October 29, 1964, to Rusk State Hospital for an indefinite period of time based upon a finding that appellant was mentally incompetent.

(3) A temporary commitment, dated August 24, 1964, to Rusk State Hospital based upon a finding that appellant was mentally ill.

(4) A continuance in the primary offense as shown by docket entry of

May 11, 1970, reciting that appellant was in Rusk State Hospital.

In view of the foregoing factors which were before the court, I believe that the trial court should have halted the revocation proceeding and empaneled a jury to determine the competency of the appellant to proceed in the revocation hearing. Ainsworth v. State, Tex.Cr.App., 493 S.W.2d 517; Vardas v. State, Tex.Cr.App., 488 S.W.2d 467; Hefley v. State, Tex.Civ.App., 480 S.W.2d 810; Townsend v. State, Tex.Cr.App., 427 S.W.2d 55. The fact that the judicial determinations of "mental illness" and "mental incompetency" occurred prior to the trial of the primary offense, where it would appear that they were not brought to the attention of the court, does not preclude appellant from asserting lack of mental competency to stand trial in the revocation proceeding.[4]

Certainly, the unvacated judgment of incompetency put the burden on the State at that point to then prove the appellant's present sanity beyond a reasonable doubt. In Francks v. State, 109 Tex.Cr.R. 440, 5 S.W.2d 157 (1928), this Court was faced with a case where two unvacated judgments of lunacy existed at the time of the accused's trial for murder. This Court went so far as to hold that a memorandum which indicated that the accused had been released on the recommendation of a certain doctor was still insufficient to show that the judgment had been vacated or annulled. The Court spoke of the State's responsibility for "assuming the burden of proof on the issue of insanity in a case of one who interposes that defense, who is shown by the testimony to have been adjudged insane at a time prior to the commission of the alleged offense." Francks v. State, supra, at pg. 158.

---

tinues to be mentally incompetent until he is discharged from the mental hospital or until his mental competency is re-determined by a court."

4. The case of Holder v. State, 406 S.W.2d 436 (Tex.Cr.App.1966) should be distinguish-

ed. There, this Court held that the issue of the accused's present insanity was not raised where he offered into evidence an order showing that two years before, he had been temporarily committed for 90 days.

Also, in the case of Bolton v. Stewart, 191 S.W.2d 798 (C.C.A.Fort Worth), no writ, it was held that a prior adjudication of the plaintiff as being of unsound mind created "prima facie proof of her insanity at that time and that she has continuously been insane since that time, and the presumption of insanity will continue so long as she lives or until such time as it shall be judicially determined that she has been restored to sanity under our 'restoration' statutes." Of course, such a presumption is rebuttable by the other party, but such party has the burden at that point to offer competent rebuttal evidence.

The case of Elliott v. Elliott, 208 S.W.2d 709 (C.C.A. Fort Worth), writ ref., n. r. e., stated that "an adjudication of insanity by the county court raises a continuous rebuttable presumption of insanity, and that only a judgment of restoration of sanity, entered in a proceeding brought for that purpose, will be sufficient to conclusively remove such rebuttable presumption."

I further refer the reader to our own Court's recent decision in Kalinec v. State, 500 S.W.2d 146 (Tex.Cr.App.1973). There the appellant made the argument that at a sanity restoration proceeding, the burden of proof was misplaced when it put the burden on the *defendant* to show that he was then sane. This Court correctly held that the issue was not properly before us, but, in dicta at least, stated that it was "very plausibly argued that the burden of proof was thus misplaced."

Perryman v. State, 494 S.W.2d 542 (Tex. Cr.App.1973) correctly stated that "the conviction of an accused person while he is legally incompetent violates due process, and that state procedures must be adequate to protect this right is settled." (Citations omitted).

I would like to distinguish three recent opinions by this Court. In Nichols v. State, 501 S.W.2d 333 (Tex.Cr.App.1973), the record contained no evidence of a prior adjudication of incompetence and held that the State was not required to rebut any inference of insanity. In Wages v. State, 501 S.W.2d 105 (Tex.Cr.App.1973), the trial court also determined that the accused had not previously been adjudicated insane and made extensive inquiry as to the accused's present insanity.

Finally, I feel compelled to further discuss and distinguish the Ainsworth case cited earlier. There, the accused had been previously determined to be mentally ill, but not mentally incompetent. We have both in the present cause.

I sincerely believe that the majority are ignoring what has been the well-recognized law of this State for many, many years. I do not know how much more evidence would be necessary before a trial judge would be required to halt the proceedings and determine the accused's competency to face the charges against him. I cannot help but question whether or not the majority would have reached the same result they have today had this been an ordinary appeal from a conviction and not an appeal from a revocation proceeding. It seems to me that a "not so rigid requirement" rule has been added to the law of probation revocation in Texas. What the majority say in effect is that since the trial judge failed to make such a determination in the trial of the primary offense, there surely must be a presumption of correctness in such action which is necessarily carried over to a probation revocation procedure before the same judge. Many attorneys refer to such logic as "bootstrapping."

I vigorously dissent.

ONION, P. J., joins in this dissent.

## ON APPELLANT'S MOTION FOR REHEARING

ONION, Presiding Judge (dissenting).

The majority has overruled the appellant's motion for rehearing without written opinion. To such action I dissent.

This appeal is from an order revoking probation wherein the appellant contends

that the trial court abused its discretion "as the evidence introduced during revocation of probation [1] became sufficiently manifest as to appellant's present incompetance (sic) so that to require under due process of law to halt the trial and conduct a hearing on that issue on his own initiative before proceeding further."

The record reflects that on October 5, 1970, the appellant waived trial by jury and entered a plea of guilty to the indictment charging him with the offense of driving a motor vehicle upon a public highway while intoxicated, subsequent offense. The court assessed the punishment at five (5) years, but suspended the imposition of the sentence conditioned in part that he "(a) Commit no offense against the laws of this State or any other State or the United States."

On March 31, 1972, the State filed its motion to revoke probation alleging that on or about March 4, 1972, appellant committed the offense of being drunk in a public place "to wit: the Bull Shed, a place where people go to dance and for public amusement" and that on the same date he did make an obscene and indecent exhibition of his person.

On April 10, 1972, appellant filed a motion entitled "Motion to Dismiss" the State's motion to revoke on the ground he was "under an indefinite commitment of insanity from the County Court of Nacogdoches County . . . ." in Cause No. 1457 and that he was "unable to stand trial." On April 20, 1972, a subsequent "Motion to Dismiss" was filed based on the same ground and further alleging the appellant was under an indefinite commitment at the very time he entered his plea of guilty to the felony offense here involved.[2]

On April 26, 1972, a hearing was held on appellant's motion to dismiss.[3]

At such hearing it was shown that on August 24, 1964, the appellant had been committed to the Rusk State Hospital for temporary hospitalization as a mentally ill person based upon an examination by two doctors, both of whom certified to the County Court that the appellant was mentally ill. On October 29, 1964, the record reflects that the appellant was committed to the Rusk State Hospital for an indefinite period as a "mentally incompetent" person. At the time of such commitment the appellant was in such hospital.

The County Clerk testified that the records of the County Court did not reflect that the appellant had ever been restored.

The "Motion to Dismiss" was overruled and the State proceeded to offer its evidence on the motion to revoke. Doug Nicholas, owner of the "Bull Shed," testified his place was one of public amusement where people danced and where he served Cokes, setups and sandwiches. He related that about 10:30 p. m. on March 4, 1972, he discovered the appellant urinating near the entrance to his business establishment while men and women were entering such place. He expressed the opinion appellant was intoxicated. Two Highway Patrolmen, who were called to the scene and arrested the appellant, expressed the opinion that the appellant was intoxicated.

---

1. From the agreement advanced in support of such contention, it appears that appellant is also relying upon the evidence offered in support of his "Motion to Dismiss Petition for Revocation of Probation."

2. The record is in some confusion. We find another "Motion to Dismiss" filed on February 10, 1971, but no motion to revoke in the record to which it might relate. The motion to dismiss was overruled.

3. It is obvious that the motion was mislabeled because the appellant would not have been entitled to have the revocation motion dismissed or quashed because he was incompetent to stand trial anymore than an indictment should be dismissed because the accused is presently insane or incompetent to stand trial on the merits.

It was this evidence, along with those records of the instant case of which the trial judge could take judicial knowledge, which the appellant contends should have caused the trial court to halt the proceedings and have a hearing to determine competency.

Among the records in this instant case, we find the following:

The indictment in the felony driving while intoxicated case was filed on March 11, 1970, alleging the prior conviction and that the subsequent offense occurred on or about February 21, 1970. The docket sheet in such cause reflects that appellant's first motion for continuance was granted with the notation "Defendant in Rusk State Hospital." As earlier noted, the plea of guilty to the felony case was entered on October 5, 1970. The transcription of the court reporter's notes of such guilty plea is not in the record before us. The printed judgment form reflects that ". . . and it appearing to the Court that the Defendant is sane . . . " Nothing before us reflects whether the court heard any evidence or conducted any inquiry into appellant's competency at the time.

On original submission the majority concluded that the finding in the judgment entered on the plea of guilty regarding sanity acted as a restoration of competency and that "Such finding would of necessity remove any pre-existing presumption arising from appellant's commitments in 1964."

The majority thus concluded that one method of restoration of competency after a person has been committed for an indefinite period as a mentally incompetent person is for such person to be charged with a felony, come before a District Judge and plead guilty and have such judge make a finding that it appears the person is sane, without any requirement that evidence be heard on the issue, etc. This is true, for this court has held that to satisfy the requirements of Article 26.13, Vernon's Ann. C.C.P., the court need not hear evidence or make inquiry into the competency of a defendant unless an issue is made of the same. Zepeda v. State, 110 Tex.Cr.R. 57, 7 S.W.2d 527 (1928); Ring v. State, 450 S.W.2d 85, 88 (Tex.Cr.App.1970); Kane v. State, 481 S.W.2d 808 (Tex.Cr.App.1972); Williams v. State, 497 S.W.2d 306 (Tex.Cr.App.1973); White v. State, 495 S.W.2d 903 (Tex.Cr.App.1973); Thorn v. State, 491 S.W.2d 425 (Tex.Cr.App.1973) and cases there cited.

And it should be borne in mind that in cases where there is a prior unvacated judgment of insanity the presumption of the sanity of a criminal defendant disappears and the burden of proof is placed upon the State beyond a reasonable doubt to show the sanity of the accused. Breland v. State, 489 S.W.2d 623 (Tex.Cr.App.1973); Nilsson v. State, 477 S.W.2d 592 (Tex.Cr.App.1972); Ex parte Tuttle, 445 S.W.2d 194 (Tex.Cr.App.1969); Fuller v. State, 423 S.W.2d 924 (Tex.Cr.App.1968); Gephart v. State, 157 Tex.Cr.R. 414, 249 S.W.2d 612 (1952); Murray v. State, 147 Tex.Cr.R. 474, 182 S.W.2d 475 (1944).

I find it regrettable that the majority found it necessary to hold that a trial court's findings on a guilty plea as to sanity where there is no requirement of a hearing, etc., restores the individual to competency where there is a prior unvacated adjudication of incompetency where the same would not be true if there was a not guilty plea and evidence of the prior adjudication is offered.

Actually, in my opinion, the majority need not have made such a holding. If the finding on the guilty plea did not restore the appellant's competency, then when the unvacated adjudication of mental incompetency was offered the burden of proof shifted to the State to show his competency to stand trial beyond a reasonable doubt. If it can be argued that the finding on the guilty plea was in fact a res-

**894**

toration proceeding and did remove any preexisting presumption, nevertheless, the evidence before the trial court showed a long period of mental difficulties, lapse of approximately two and one half years from the guilty plea to the time of the revocation hearing together with the claims that he was not competent to defend himself, and the fact of his unusual conduct alleged to be a violation of the probationary conditions. I cannot reach any other result under the given circumstances except that the trial court erred in not conducting a separate competency hearing before a jury before concluding the revocation hearing. I cannot reach any other result under the given circumstances except that evidence of appellant's present incompetency was sufficiently manifest at the revocation hearing so that the due process of law would require the trial court to halt the proceedings on his own initiative and conduct a separate competency hearing before a jury before proceeding further. Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L. Ed.2d 815 (1966); Townsend v. State, 427 S.W.2d 55 (Tex.Cr.App.1968); Vardas v. State, 488 S.W.2d 467 (Tex.Cr.App.1973).[4]

Further, it should be remembered that an accused is not required to prove actual insanity or incompetency to stand trial before the trial court is required to conduct a separate hearing on the matter. Ainsworth v. State, 493 S.W.2d 517 (Tex.Cr.App. 1973). "If this were the rule, the separate hearing procedure would become meaningless." Ainsworth v. State, supra; Perryman v. State, 494 S.W.2d 542 (Tex.Cr.App. 1973).

For the reasons stated, I dissent to the court's action in overruling appellant's motion for rehearing.

ROBERTS, J., joins in this dissent.

4. While Pate v. Robinson, supra, would not require a jury finding on the issue, Texas law would. Townsend v. State, supra footnote #3.